United States Bankruptcy Court
Southern District of Texas

**ENTERED**

October 25, 2023

Nathan Ochsner, Clerk

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| NOBLE HOUSE HOME FURNISHINGS LLC, et al., | Case No. 23-90773 (CML) |
| Debtors. [1] | (Jointly Administered) |

**ORDER (I) AUTHORIZING (A) THE SALE OF CERTAIN ASSETS OF
THE DEBTORS FREE AND CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES
AND (B) THE DEBTORS TO ENTER INTO AND PERFORM UNDER THE PURCHASE
AGREEMENT AND (II) GRANTING RELATED RELIEF**

(Related Docket Nos. 21, 81, 86)

Upon the emergency motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Order") (i) authorizing and approving, among other things, (a) the sale of the Purchased Assets (as defined in the Purchase Agreement (as defined below)) of Debtors Noble House Home Furnishings LLC, Best Selling Home Decor Furniture, LLC, Le Pouf, LLC, and NH Services LLC (the "Sellers") to Gigacloud Technology Inc. (including any assignee or nominee, the "Purchaser") free and clear of liens, claims, and encumbrances (the "Transaction"), (b) the Sellers to enter into and perform under the Purchase Agreement (as defined herein), (c) the assumption and assignment of certain executory

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification numbers, are: Noble House Home Furnishings LLC (1671); Best Selling Home Decor Furniture, LLC (5580), Le Pouf, LLC (8197), NH Services LLC (9626), and Heavy Metal, Inc. (3124). The Debtors' service address in these Chapter 11 cases is 700 Milam Street, Suite 1300, Houston, TX 77002.

[2] The Motion was filed on September 12, 2023 as *Debtors' Emergency Motion for Entry of Orders (A)(I) Authorizing Asset Purchase Agreement for Sale of Substantially All of Debtors' Assets (II) Approving Bidding Procedures for Sale of Debtors' Assets, (III) Approving Bid Protections, (IV) Scheduling Certain Dates With Respect Thereto, (V) Approving the Form and Manner of Notice Thereof, and (VI) Approving Contract Assumption and Assignment Procedures; (B) Approving (I) Sale of Certain Assets Free and Clear of All Liens, Claims, Encumbrances, and Other Interests, and (II) Assumption and Assignment of Certain Contracts and Leases; and (C) Granting Related Relief* [Docket No. 21]. Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to it in the Motion.

13361215v4

contracts and unexpired leases in connection with the Transaction, and (ii) granting related relief, all as more fully set forth in the Motion; and upon the evidence offered in support of the Motion; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that it may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. § 1408; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion, and having heard the statements in support of the relief requested therein at any hearing before this Court, and upon the First Day Declaration and the evidence submitted in support of the Motion; and this Court having conducted a hearing on the Motion (the "Sale Hearing"), at which time all interested parties were offered an opportunity to be heard with respect to the Motion; and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, **THE COURT HEREBY FINDS THAT**:

I.        **Jurisdiction, Final Order, and Statutory Predicates.**

A.        The Court has jurisdiction to hear and determine the Motion pursuant to 28 U.S.C. § 1334. Venue is proper in this District and in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.        The Debtors' rights, title and interest in the Purchased Assets constitute property of the Seller's respective bankruptcy estates and title thereto is vested in the respective Seller's bankruptcy estates within the meaning of section 541(a) of the Bankruptcy Code.

C.      The statutory predicates for the relief requested in the Motion are sections 105(a), 363, and 365 of the Bankruptcy Code, and Bankruptcy Rules 2002, 6004 and 6006 and Bankruptcy Local Rule 2002-1.

D.      This Sale Order constitutes a final order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, the Court expressly finds that there is no just reason for delay in the implementation of this Sale Order, waives any stay, and expressly directs entry of judgment as set forth herein.

## II.     Notice of the Purchase Agreement, Transaction, Sale Hearing and Bidding Procedures Order.

E.      As evidenced by the affidavits of service previously filed with the Court, and based on the representations of counsel at the Sale Hearing, due, proper, timely, adequate and sufficient notice of the Motion, the Bidding Procedures Order, the Auction, the Sale Hearing, the Purchase Agreement, this Sale Order and the Transaction has been provided in accordance with sections 102(1) and 363 of the Bankruptcy Code, Bankruptcy Rules 2002, 9007, 9008 and 9014, and the Local Bankruptcy Rule 2002-1.  The Debtors have complied with all obligations to provide notice of the Motion, the Bidding Procedures Order, the Auction, the Sale Hearing, the Purchase Agreement, this Sale Order and the Transaction as required by the Bidding Procedures Order.  The aforementioned notices are good, sufficient and appropriate under the circumstances, and no other or further notice of the Motion, the Bidding Procedures Order, the Auction, the Sale Hearing, the Purchase Agreement, this Sale Order or the Transaction is, or shall be, required.  The requirements of Bankruptcy Rule 6004(a) and the Bankruptcy Local Rules are satisfied by such notice.

F.      A reasonable opportunity to object and be heard with respect to the Transaction, the Motion and the relief requested therein and provided in this Sale Order has been afforded to all interested persons and entities, including the Notice Parties (as defined in the Bidding Procedures Order).

G.      As demonstrated by the evidence proffered or adduced at the Sale Hearing and the representations of counsel at the Sale Hearing, the Debtors have complied in all material respects with the Bidding Procedures Order.  The Debtors and their professionals have adequately and appropriately marketed the Purchased Assets in compliance with the Bidding Procedures and the Bidding Procedures Order, and in accordance with the Debtors' fiduciary duties.  Based upon the record of these proceedings, creditors, other parties in interest and prospective purchasers were afforded a reasonable and fair opportunity to bid for the Purchased Assets.

H.      The Bidding Procedures were substantively and procedurally fair to all parties and all potential bidders and afforded notice and a full, fair and reasonable opportunity for any person to make a higher or otherwise better offer to purchase the Purchased Assets.  The Debtors conducted the sale process without collusion and in accordance with the Bidding Procedures.

I.      The Purchaser is the Successful Bidder, and the Purchase Agreement is the Successful Bid (each as defined in the Bidding Procedures), for the Purchased Assets in accordance with the Bidding Procedures Order.  The Transaction and the Purchase Agreement comply with the Bidding Procedures Order and all other applicable orders of the Court.

J.      To maximize the value of the Purchased Assets and Transaction, it is essential that should Debtors proceed with consummating the sale of the Purchased Assets pursuant to the Purchase Agreement, that same occur within the timeframe set forth in the Purchase Agreement.  Time is of the essence in consummating the Transaction, and Debtors and Purchaser

intend to complete the Transaction as soon as reasonably practicable.

**III.     Good Faith of the Purchaser.**

K.     The Purchase Agreement and the related agreements were negotiated, proposed, and entered into by the Sellers and the Purchaser without collusion, in good faith, and from arm's-length bargaining positions.  Neither the Sellers nor the Purchaser have engaged in any conduct that would cause or permit the Purchase Agreement, any related agreements or the Transaction to be avoided, or for any costs or damages to be imposed, under section 363(n) of the Bankruptcy Code.

L.     The Purchaser is consummating the Transaction in good faith.  The Purchaser is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code and has proceeded in good faith in all respects in connection with the Transaction.  The Purchaser is therefore entitled to all of the protections afforded under section 363(m) of the Bankruptcy Code.  Neither the Sellers nor the Purchaser have engaged in any conduct that would prevent the application of section 363(m) of the Bankruptcy Code.  The Debtors were free to deal with any other party interested in buying or selling some or all of the Purchased Assets on behalf of the Debtors' estates.  The Purchaser (i) agreed to subject its bid to the competitive Bidding Procedures set forth in the Bidding Procedures Order, including the Auction; (ii) disclosed all payments and other consideration to be made or otherwise provided by the Purchaser and other agreements or arrangements entered into by the Purchaser in connection with the Sale; (iii) the Purchaser has not violated section 363(n) of the Bankruptcy Code by any action or inaction; and (iv) the negotiation and execution of the Purchase Agreement, including the Sale contemplated thereby, were at arms'-length and in good faith.  The protections afforded by section 363(m) of the Bankruptcy Code are integral to the Transaction and the Purchaser would not consummate the Transaction without such protections.

M.     The consideration provided by the Purchaser pursuant to the Purchase Agreement: (i) is fair and adequate and constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession thereof, or the District of Columbia (including the Uniform Fraudulent Transfer Act); (ii) is fair consideration under the Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, the Bankruptcy Code, and any other applicable laws; and (iii) will provide a greater recovery for the Debtors' estates and their creditors than would be provided by any other reasonably practicable available alternative.  The Purchase Agreement was not entered into, and the Sale is not being consummated, for the purpose of hindering, delaying, or defrauding creditors of the Debtors under the Bankruptcy Code or under any other applicable law.  Neither the Debtors nor the Purchaser have entered into the Purchase Agreement or are consummating the Sale with any fraudulent intent or otherwise improper purpose prohibited by law.

IV.     **Highest and Best Offer.**

N.     The Debtors' marketing process with respect to the Purchased Assets, including the Debtors' prepetition marketing process with respect to the Purchased Assets, afforded a full, fair, and reasonable opportunity for any person or entity to make a higher or otherwise better offer to purchase the Purchased Assets.  The Purchase Agreement: (i) constitutes the highest and best offer for the Purchased Assets; (ii) is fair and reasonable; and (iii) is in the best interests of the Debtors, their estates, their creditors and all other parties in interest.

O.     The Debtors may sell the Purchased Assets free and clear of all claims, liens, interests and encumbrances (other than Permitted Liens) because, with respect to each creditor asserting a claim, lien, interest or encumbrance, one or more of the standards set forth in sections 363(f)(1)-(5) of the Bankruptcy Code have been satisfied.  Those holders of claims, liens, interests or encumbrances that did not object to or that withdrew their objections to the sale of the Purchased

Assets, the Transaction, or the Motion, are deemed to have consented to the Motion, and the Transaction pursuant to section 363(f)(2) of the Bankruptcy Code.  Those holders of claims, liens, interests, or encumbrances that did object fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code or are adequately protected.  In addition, the DIP Agent (as defined in the *Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection to the Prepetition ABL Parties, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief* [Docket No. 130] (the "DIP Order")), which holds a security interest in the Property (including the Purchased Assets), has consented to the Transaction on the terms set forth herein and the Purchase Agreement subject to (a) the occurrence of the conditions to closing set forth in paragraph 11 herein; (b) the remittance to the DIP Agent of all proceeds of the Purchase Price for indefeasible payment, in cash, to the DIP Obligations (as defined in the DIP Order), net only of the Wind Down (as set forth in the Budget (as defined in the DIP Order)) and the Carve Out (as defined in the DIP Order) in accordance with the DIP Order, *provided that* following the satisfaction of the conditions set forth in clauses (a) and(b) and the approval of releases satisfactory to the DIP Agent as set forth in paragraph 14 of this Order, the DIP Liens shall be deemed released from the Purchased Assets (but shall remain in place with respect to the proceeds thereof and until the DIP Obligations are Paid in Full (as defined in the DIP Order)  without further action by any party or order of the Bankruptcy Court.

P.      The Debtors' determination that the Purchase Agreement constitutes the highest and best offer for the Purchased Assets constitutes a valid and sound exercise of the Debtors' business judgment.

Q.      Consistent with their fiduciary duties, the Debtors have demonstrated good, sufficient and sound business reasons and justifications for entering into the Transaction and the performance of their obligations under the Purchase Agreement, including, but not limited to, the fact that the Purchase Agreement will provide a greater recovery for the Debtors' estates and creditors than would be provided by any other available alternative, including a separate liquidation of the Debtors and the Purchased Assets.

**IT IS HEREBY ORDERED THAT**:

1.      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to these chapter 11 cases pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

2.      The Motion is granted as provided herein, and entry into and performance under, the Purchase Agreement and the consummation of the Transaction contemplated thereby is authorized and approved.

3.      All objections to the Motion or the relief requested therein that have not been withdrawn, waived or settled as announced to the Court at the Sale Hearing or by stipulation filed with the Court, and all reservations of rights included in such objections, are hereby denied and overruled on the merits with prejudice.  Those parties who did not object or withdrew their objections to the Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code to the relief granted herein.

4.      This Sale Order will be binding in all respects upon the Debtors, their bankruptcy estates, all creditors, all holders of equity interests in the Debtors, all holders of any interests or

claims (whether known or unknown) against the Debtors, any and all alleged holders of interests or claims against or on all or any portion of the Purchased Assets, all counterparties to any executory contract or unexpired lease of the Debtors, the Purchaser and all agents, representatives, affiliates, and permitted successors and assigns of the Purchaser, and any trustees, examiners, or other fiduciary under any section of the Bankruptcy Code, if any, subsequently appointed in the Debtors' Chapter 11 Cases or upon a conversion to chapter 7 under the Bankruptcy Code of any or all of the Debtors' cases.  The terms and provisions of the Purchase Agreement and this Order will inure to the benefit of the Debtors, their bankruptcy estates, their creditors, the Purchaser and all agents, representatives, affiliates, and permitted successors and assigns of the Purchaser, and any other affected third parties, including all persons asserting any interests or claims in the Purchased Assets to be sold to the Purchaser pursuant to the Purchase Agreement, notwithstanding any subsequent appointment of any trustee(s), party, entity, or other fiduciary under any section of any chapter of the Bankruptcy Code, as to which trustee(s), party, entity, or other fiduciary such terms and provisions likewise will be binding.

5.      Notice of the Motion and Sale Hearing was adequate, appropriate, fair and equitable under the circumstances and complied in all respects with section 102(1) of the Bankruptcy Code, Bankruptcy Rules 2002, 6004 and 6006, and the Bidding Procedures Order.

## APPROVAL OF THE PURCHASE AGREEMENT

6.      In accordance with section 363 of the Bankruptcy Code and Bankruptcy Rule 6004 and as described in the Motion, the Debtors are authorized, but not directed, to sell the Purchased Assets to the Purchaser in accordance with the terms and conditions set forth in the *Asset Purchase Agreement by and among Noble House Home Furnishings LLC and Certain Affiliates, as Seller, and Gigacloud Technology Inc as Buyer*, dated as of September 11, 2023, attached as Exhibit 2 to

the Bidding Procedures Order (as the same may be amended pursuant to Section 2.3(c) thereof, or otherwise as permitted hereunder, the "Purchase Agreement"). The Purchase Agreement, together with all annexes, exhibits, and amendments thereto, is hereby approved.

7.     The Debtors are authorized and empowered, but not directed, to take any and all actions necessary or appropriate to: (a) consummate the sale of the Purchased Assets to the Purchaser pursuant to and in accordance with the terms and conditions of the Purchase Agreement; (b) close the sale of the Purchased Assets as contemplated in the Purchase Agreement and this Order (including any customary or immaterial modifications to the purchase price); and (c) execute and deliver, perform under, consummate, implement, and close fully the Purchase Agreement, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Purchase Agreement and the sale of the Purchased Assets, including any other ancillary document, or as may be reasonably necessary or appropriate to the performance of the obligations as contemplated by the Purchase Agreement and such other ancillary documents.

8.     The Purchase Agreement represents the highest and best offer to purchase the Purchased Assets under the facts and circumstances of these chapter 11 cases. Approval of the Purchase Agreement and the consummation of the transaction contemplated hereby is in the best interests of the Debtors, their creditors, their estates, and all other parties in interest. The Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the sale of the Purchased Assets.

**TRANSFER OF THE PURCHASED ASSETS**

9.     The Debtors are authorized, but not directed, to sell the Purchased Assets free and clear of liens, claims, and encumbrances against the Debtors or their estates (other than included

in the Assumed Liabilities (as defined in the Purchase Agreement)), because one or more of the standards set forth in section 363(f) of the Bankruptcy Code has been satisfied.

10.     Pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, the sale of the Purchased Assets under the terms and conditions set forth in the Purchase Agreement shall be free and clear of any and all liens, claims, encumbrances, and other interests of any kind or nature whatsoever (other than included in the Assumed Liabilities (as defined in the Purchase Agreement)) (an "Interest"); *provided* that any such Interest shall attach to the proceeds of the sale with the same validity, in the amount, with the same priority as, and to the same extent that any such liens, claims, and encumbrances have with respect to the Purchased Assets, subject to any claims, defenses, or challenges that the Debtors or party-in-interest may possess with respect thereto.  Any such interests shall be transferred and attach to the proceeds of the sale with the same validity and priority, and subject to the same claims, defenses and challenges that such liens had against the Purchased Assets immediately prior to the Closing (as defined below).

11.     Notwithstanding anything to the contrary contained in this Order, upon the Closing of the Transaction, (a) all proceeds of the Transaction shall be used to make payments and/or provide funding to pay indefeasibly, in cash, the DIP Obligations (including, without limitation, to fund the Prepetition ABL Indemnity Account, if necessary ) net only of the Wind Down and the Carve Out, and (b) the DIP Agent is authorized to issue non-renewal notices under any outstanding letters of credit issued pursuant to the Prepetition ABL Facility without the need for any further order of this Court.

12.     Upon entry of this Order, the Closing of the Transaction, the occurrence of the events set forth in paragraph 11 herein, and funding of the Carve Out in accordance with the DIP Order, all ongoing commitments under the DIP Facility (as defined in the DIP Order) shall be

deemed terminated and canceled, and the DIP Agent's obligations under paragraph 33 of the DIP Order shall be satisfied and none of the DIP Agent or DIP Lenders shall have any further liability whatsoever for any fees or amounts constituting the Carve Out, regardless of when arising or incurred.

13.     The Carve Out Trigger Notice (as defined in the DIP Order) shall be deemed to be delivered on the Closing Date, and such amount shall be reported in writing to the DIP Agent on the Closing Date (including the calculation thereof in accordance with Paragraph 33 of the DIP Order).  The Carve Out (as defined in the DIP Order) shall be funded on the Closing Date from the Professional Fee Reserve (as defined in the DIP Order) and, if necessary, from the proceeds of the Transaction.  The DIP Agent shall be deemed to have satisfied each of its obligations with respect to the Carve Out as set forth in the DIP Order upon such funding.  Prior to the Closing Date, the Debtors shall provide good-faith, non-binding estimates to the DIP Agent regarding the expected amount of the Carve Out to be funded on the Closing Date.  Except as set forth in this paragraph, nothing in this Order shall impair, modify, or otherwise affect the Carve Out (as defined in the DIP Order).  Except as expressly set forth in this Order, nothing herein shall otherwise impair, modify, or affect the DIP Order.

14.     Subject to the Committee's rights to assert a Challenge by the Challenge Deadline under the DIP Order, upon entry of this Order, the DIP Agent, DIP Lenders, and the Prepetition ABL Parties (each as defined in the DIP Order) and their respective affiliates, agents, attorneys, advisors, professionals, officers, directors and employees shall be deemed released and discharged by each and all of the Debtors, the Debtors' estates, any party acting on behalf of the Debtors or their Estates, and the Purchaser, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other entities who may purport to assert

any cause of action, directly or derivatively, by, through, for, or because of the foregoing entities, from any and all claims, obligations, rights, suits, damages, causes of action, remedies, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of any of the Debtors, the Debtors' estates and the Purchaser, as applicable, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtors, the Debtors' estates, the Purchaser or their affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any claim against, or interest in, the Debtors or the Purchaser, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the transactions or events giving rise to, the business or contractual arrangements between any Debtors and the DIP Agent, DIP Lenders or the Prepetition ABL Parties, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions, the Sale, the DIP Agreements, the DIP Facilities, the Prepetition ABL Facility, the Prepetition ABL Documents, the Chapter 11 Cases, or any restructuring transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Sale, the DIP Agreements, the DIP Facilities, the Prepetition ABL Facility, the Prepetition ABL Documents, the filing of the Chapter 11 Cases, this Order, or the distribution of proceeds from the Sale or any other related agreement, or upon any other act or omission, transaction, agreement, event or other occurrence taking place on or before the closing; provided that any right to enforce this Order is not so released.

15.     All persons and entities holding or otherwise asserting an Interest in the Purchased Assets hereby are forever barred, estopped, and permanently enjoined from asserting such persons' or entities' Interests in and to the Purchased Assets against the Purchaser or its successors or assigns, their property, or the Purchased Assets. For the avoidance of doubt, no holder's Interest

in the Purchased Assets as of the Closing shall impact Purchaser's future rights to sell, transfer or dispose of the Purchased Assets in the ordinary course of its business. Notwithstanding any provision of the Purchase Agreement to the contrary, after the Closing of the sale of the Purchased Assets, the Debtors shall have no further liability with respect to the Purchased Assets, and any claims, whether administrative or otherwise, relating to or arising from the Purchased Assets after the Closing of the sale and transfer of the Purchased Assets that are asserted against the Debtors shall be deemed disallowed.

16.    A certified copy of this Order may be filed with the appropriate clerk and/or recorded with the recorder to act to cancel any of the liens and other encumbrances of record. This Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, or local government agency, department or office, and such agencies, departments and offices are authorized and directed to accept this Order for filing or recording.

17.    If any person or entity which has filed statements or other documents or agreements evidencing liens on, or interests in, the Purchased Assets shall not have delivered to the Debtors prior to the Closing in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements, and any other documents necessary for the purpose of documenting the release of liens or interests which the person or entity has or may assert with respect to the Purchased Assets, the Debtors are hereby authorized, and the Purchaser is hereby authorized to execute and file such statements, instruments, releases, and other documents on behalf of such person or entity with respect to the Purchased Assets. Notwithstanding the foregoing, the provisions of this Order authorizing the sale and assignment of the Purchased Assets shall be self-executing, and none of the Debtors or the Purchaser shall be

required to execute or file releases, termination statements, assignments, consents or other instruments in order to effectuate, consummate and implement the provisions of this Order.

18.     This paragraph 18 is subject to the Committee's right to assert a challenge or objection to the liens and/or claims of BALC (as defined below) (which may be by email notice to Debtors' counsel and BALC counsel) by no later than **October 26, 2023, at 5:00 p.m. Central time**.  If such challenge or objection is asserted, the Court shall hold a hearing on such matter on **October 27, 2023, at 2:00 p.m.**  Notwithstanding anything herein to the contrary, Banc of America Leasing & Capital, LLC ("BALC"), which has agreed to release its valid and perfected liens on all equipment owned by the Debtors, which equipment comprises a portion of the Purchased Assets, shall be granted an allowed unsecured deficiency claim in the Debtors' estates in the amount of $9,242,172.02, which claim is not subject to objection, avoidance under bankruptcy or non-bankruptcy law, nor subject to setoff under Section 553 of the Bankruptcy Code or similar state law.  BALC's claim shall be reflected in the Debtors' claim records as an allowed unsecured claim in the foregoing amount without the need for BALC to file a proof of claim.

19.     Notwithstanding anything in the Purchase Agreement or this Order, including but not limited to Finding O of this Order, any assets or materials owned by Obeetee, Inc., are not, and will not be considered, Purchased Assets.

20.     This Order is and shall be binding upon and govern the acts of all persons and entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal and local officials, and all other persons and entities who may be required by operation of law, the duties of their office or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be

required to report or insure any title or state of title in or to any lease, and each of the foregoing persons and entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Purchase Agreement.

21.     On and after the Closing Date, all persons and entities holding or otherwise asserting an Interest in the Purchased Assets arising under, out of, in connection with, or in any way relating to the Debtors, the Purchased Assets or the transfer of the Purchased Assets to the Purchaser (other than included in the Assumed Liabilities (as defined in the Purchase Agreement)), shall execute such documents and take all other actions as may be reasonably necessary to release their respective Interests in the Purchased Assets (but not the proceeds thereof), as such Interests may have been recorded or otherwise filed.  The Purchaser may, but shall not be required to, file a certified copy of this Order in any filing or recording office in any federal, state, county, or other jurisdiction in which the Debtors are incorporated or have real or personal property, or with any other appropriate clerk or recorded with any other appropriate recorder, and such filing or recording shall be accepted and shall be sufficient to release, discharge, and terminate any of the Interests as set forth in this Order as of the Closing Date.

22.     All persons or and entities that are in possession of any portion of the Purchased Assets on the Closing Date shall promptly surrender possession thereof to the Purchaser on or after the Closing Date.

23.     On and after the Closing Date, no holder of an Interest in or against the Debtors or the Purchased Assets shall interfere with the Purchaser's title to, or use and enjoyment of, the Purchased Assets based on or related to such Interest, including, but not limited to, filing or

prosecuting any action against the Debtors or Purchaser, including, but not limited to, for specific performance or injunctive relief, relating to the Purchased Assets in any way.

24.     The Transfer of the Purchased Assets to the Purchase pursuant to the Purchase Agreement does not require any consents other than specifically provided for in the Purchase Agreement or as otherwise provided for herein.

25.     Section 2.1(l) of the Purchase Agreement is hereby deleted in its entirety and replaced with the following:

> "(l)     all claims or causes of action of Seller as against any vendor or supplier to the Business, including all preference or avoidance claims and actions of Seller arising under Sections 544, 547, 548, 549, and 550 of the Bankruptcy Code as against any such vendor or supplier, *provided that* all such preference or avoidance claims and actions of Seller shall be deemed waived upon Closing."

26.     Section 2.2(m) of the Purchase Agreement is hereby deleted in its entirety and replaced with the following:

> "(m)     Except as provided in Sections 2.1(d), (e), (g) and (l), all claims or causes of action of Seller, including all preference or avoidance claims and actions of Seller, including, without limitation, any such claims and actions arising under Sections 544, 547, 548, 549 and 550 of the Bankruptcy Code. For the avoidance of doubt, all claims and causes of action against the Debtors' current and former officers, directors, insiders and equityholders shall constitute Excluded Assets."

27.     In lieu of any working capital adjustment or holdback pursuant to Section 2.6 of the APA (which Section 2.6 is hereby deleted in its entirety, as well as any corresponding cross-references to such Section or the provisions therein within the APA), the Base Purchase Price shall be reduced by (i) the difference between (x) $86,090,446.35 and (y) the outstanding DIP Obligations as of the Closing Date.  In connection with the foregoing, the Debtors agree that they will (i) pay for all goods presently in transit (in an approximate amount of $2,500,000), (ii) not pay any prepetition claims aside from $500,000 for temporary labor costs that are reflected as a line item in the DIP Budget, (iii) not make any expenditures outside of or in excess of the amounts

under the existing DIP Budget without the consent of the DIP Agent and the Purchaser, (iv) use all cash-on-hand to reduce the DIP Obligation, provided that any proceeds of DIP Loans shall be retained and applied by the Debtors in accordance with the DIP Budget, (v) not make new orders for goods without direction of the Purchaser and consent of the DIP Agent, and (vi) make no cash sales of inventory other than the GDF Outlet in Chatsworth and through ordinary course direct-to-customer websites such as gdfstudio.com, lepoufhome.com, okioki.com that sell via credit card or cash apps.

28.    The Purchase Agreement and any related agreements, documents, or other instruments may be modified, amended or supplemented by the parties thereto in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment, or supplement does not have a material adverse effect on the Debtors' estates or the rights of any party holding a lien, claim or encumbrance on or against the Purchased Assets.

29.    No bulk sales law or similar law of any state or other jurisdiction shall apply in any way to the transactions with the Debtors that are approved by this Sale Order, including, without limitation, the Purchase Agreement and the Transaction.

30.    Notwithstanding anything in this Sale Order, subject to section 525(a) of the Bankruptcy Code, no governmental unit (as defined in Bankruptcy Code § 101(27)) or any representative thereof may deny, revoke, suspend, or refuse to renew, any right, permit, license, copyright, patent, trademark or other permission relating to the use of the Purchased Assets sold, transferred, or conveyed to the Purchaser on account of the filing or pendency of these chapter 11 cases, the conduct of the Sale, or the consummation of the Transaction contemplated by the Purchase Agreement and the related agreements.

**PROHIBITION OF ACTIONS AGAINST THE PURCHASER**

31.     The Purchaser is not an "insider" of the Debtors, as that term is defined in section 101(31) of the Bankruptcy Code.

32.     By virtue of the Transaction, neither the Purchaser nor any of its affiliates shall be deemed to:  (i) be a legal successor, or otherwise deemed to be a successor, to any of the Debtors under any theory of law or equity (other than with respect to any obligations as an assignee under the Assigned Contracts arising after the effective date of the Purchase Agreement); (ii) have, de facto or otherwise, merged with or into any or all Debtors or their estates; (iii) have a common identity or a continuity of enterprise with the Debtors; (iv) be an alter ego or a mere continuation or substantial continuation, or be holding itself out as a mere continuation, of the Debtors or any business, enterprise, or operation of the Debtors; or (v) be liable for any acts or omissions of the Debtors in the conduct of the business or arising under or related to the Purchased Assets, other than as set forth in the Purchase Agreement, in the case of each of the foregoing (i)-(v), including, without limitation, within the meaning of any foreign, federal, state or local revenue law, pension law, the Employee Retirement Income Security Act, the Consolidated Omnibus Budget Reconciliation Act, the WARN Act (29 U.S.C. §§ 2101 et seq.), the Fair Labor Standard Act, Title VII of the Civil Rights Act of 1964 (as amended), the Age Discrimination and Employment Act of 1967 (as amended), the Federal Rehabilitation Act of 1973 (as amended), the National Labor Relations Act (29 U.S.C. § 151, et seq.), environmental liabilities, debts, claims or obligations, any liabilities, debts or obligations of or required to be paid by the Debtors for any taxes of any kind for any period, labor, employment, or other law, rule or regulation (including without limitation filing requirements under any such laws, rules or regulations), or under any products liability law or doctrine with respect to the Debtors' liability under such law, rule or regulation or doctrine.

33.     All rights of any party to set off any claims, debts, or obligations owed by or to the Purchaser in connection with the assets shall be extinguished on the effective date of the Purchase Agreement.  Other than as expressly set forth in the Purchase Agreement with respect to assumed liabilities, the Purchaser shall not have any responsibility for (a) any liability or other obligation of the Debtors or related to the assets or (b) any claims (as such term is defined by section 101(5) of the Bankruptcy Code) against the Debtors or any of their predecessors or affiliates.  To the greatest extent allowed by applicable law, the Purchaser shall have no liability whatsoever with respect to the Debtors' (or their predecessors' or affiliates') respective businesses or operations or any of the Debtors' (or their predecessors' or affiliates') obligations based, in whole or part, directly or indirectly, on any theory of successor or vicarious liability of any kind or character, or based upon any theory of antitrust, environmental, successor or transferee liability, de facto merger or substantial continuity, labor and employment or products liability, whether known or unknown as of the effective date, now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated, including liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of the Property prior to the effective date of the Purchase Agreement.

## ASSUMPTION AND ASSIGNMENT OF ASSIGNED CONTRACTS

34.     Subject to, and at the date and time of, the closing (the "Closing") of the Sale of the Purchased Assets contemplated by this Order, the Debtors may assume the Assigned Contracts (as identified in the Purchase Agreement) and assign each of them to the Purchaser pursuant to section 365 of the Bankruptcy Code free and clear of all claims and interests except as otherwise provided in the Purchase Agreement and subject to the Assumed Liabilities, and notwithstanding any anti-assignment clause as provided in section 365(f) of the Bankruptcy Code.  The assumption and

assignment of the Assigned Contracts pursuant to the terms of this Order is integral to the Purchase Agreement and is in the best interests of the Debtors and their estates, creditors and other parties in interest, and represents the reasonable exercise of sound and prudent business judgment by the Debtors.

35.     Upon the Closing, in accordance with sections 363 and 365 of the Bankruptcy Code, the Purchaser will be fully and irrevocably vested in all right, title, and interest of each Assigned Contract.

36.     The Debtors and the Purchaser have, to the extent necessary, satisfied the requirements of section 365 of the Bankruptcy Code, including sections 365(b)(1)(A), 365(b)(1)(B), 365(b)(3) (to the extent applicable) and 365(f) of the Bankruptcy Code, in connection with the sale and assumption and assignment of the Assigned Contracts to the extent provided under the Purchase Agreement and have:  (1) cured any default existing prior to the date hereof under any of the Assigned Contracts, within the meaning of section 365(b)(1)(A) of the Bankruptcy Code, and (2) provided compensation or adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default prior to the date hereof under any of the Assigned Contracts, within the meaning of section 365(b)(1)(B) of the Bankruptcy Code.

37.     As and to the extent requested or required, Purchaser has provided adequate assurance of future performance of and under the Assigned Contracts, within the meaning of sections 365(b)(1), 365(b)(3) (to the extent applicable) and 365(f)(2) of the Bankruptcy Code.

38.     The Assigned Contracts are assignable notwithstanding any provisions contained therein to the contrary, and any provisions in any Assigned Contracts that prohibit or condition the assignment of such Assigned Contracts or allow the non-Debtor counterparty to such Assigned

Contracts to terminate, recapture, impose any penalty, condition on renewal or extension or modify any term or condition upon the assignment of such Assigned Contracts constitute unenforceable anti-assignment provisions that are void and of no force and effect.

39.     Except as otherwise agreed in writing between the Debtors, the Purchaser and the Counterparty to each Assigned Contract, stated on the record at the Sale Hearing, or determined by Court order resolving a timely-filed objection that is pending a final determination of actual Cure Cost, the respective amounts set forth on the cure notices approved and served pursuant to the Bidding Procedures Order [Docket No. 86] (the "Cure Notice"), and served upon each counterparty to the Assigned Contracts (each a "Counterparty"), are the sole amounts necessary under sections 365(b)(1)(A) and (B) and 365(f)(2)(A) of the Bankruptcy Code to cure all defaults and pay all actual pecuniary losses thereunder (the "Cure Costs").  The Counterparties to each Assigned Contract are forever bound by such Cure Costs and, upon payment of such Cure Costs, if any, are hereby enjoined from taking any action against the Debtors and their bankruptcy estates, Purchaser and all agents, representatives, affiliates, and permitted successors and assigns of the Purchaser, or the Purchased Assets with respect to any claim for cure under any Assigned Contract.

40.     For all Assigned Contracts for which a Cure Notice was served, Purchaser is authorized and directed to pay all Cure Costs required to be paid by such parties in accordance with the Purchase Agreement upon the later of (a) the Closing or (b) for any Assigned Contract for which an objection has been filed to the assumption and assignment of such agreement or the Cure Costs relating thereto and such objection remains pending as of the date of this Order, the resolution of such objection by settlement or order of this Court.  If no out-of-court resolution can be reached, either party may request a hearing on no less than 14 days' notice to the other party.

41.     Each Counterparty to an Assigned Contract is hereby forever barred, estopped, and permanently enjoined from asserting against the Debtors, the Purchaser, or any of their affiliates (including any designees), or the property of any of them, any default, breach, claims of pecuniary losses existing as of the Closing or by reason of Closing, action, liability, or other cause of action existing as of the date of the Sale Hearing whether asserted or not, or, against the Purchaser or any of its affiliates (including any designees), any counterclaim, defense, setoff, or any other claim asserted or assertable against the Debtors.  Each Counterparty to an Assigned Contract is hereby forever barred, estopped, and permanently enjoined from asserting any objection to the assumption and assignment of such Counterparty's Assigned Contract including, without limitation, that its consent is necessary for such assumption and assignment.

42.     Notwithstanding anything to the contrary in this Order, or any notice related thereto, the Cigna Contracts (as defined in the Bidding Procedures Order) shall not be assumed and assigned to the Purchaser as part of the Sale.

## **RELATED RELIEF**

43.     All time periods set forth in this Order and the Purchase Agreement shall be calculated in accordance with Bankruptcy Rule 9006(a).

44.     The stay provided for in Bankruptcy Rules 6004(h) is hereby reduced to the extent necessary to permit Closing of the sale of the Purchased Assets.  This Order shall otherwise be effective immediately upon its entry.

45.     To the extent there is any inconsistency between the terms of the Purchase Agreement, the Motion, and this Order, the terms of this Order shall govern.

46.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Bankruptcy Local Rules are satisfied by such notice.

47.     The Debtors are authorized, but not directed, to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion and the Purchase Agreement.

48.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

49.     This Order shall be binding upon the Purchaser and all successors and assigns of the Purchaser, the Debtors, their estates, all creditors of and holders of equity interests in the Debtors, and any holders of liens against or on all or any portion of the Purchased Assets.  This Order and the Purchase Agreement shall inure to the benefit of the Debtors, their estates, their creditors, the Purchaser, and its respective successors and assigns.

Signed:  October 25, 2023

Christopher Lopez
United States Bankruptcy Judge