IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| IN RE:<br><br>NOBLE HOUSE HOME FURNISHINGS LLC, et al.<br><br>Debtors.[1] | CASE NO. 23-90773 (CML)<br><br>CHAPTER 11 |
| GIGACLOUD TECHNOLOGY INC<br><br>PLAINTIFF<br><br>V.<br><br>WAN HAI LINES (USA) LTD.; WAN HAI LINES LTD.; and WAN HAI LINES (SINGAPORE) PTE LTD.<br><br>DEFENDANTS | ADV. NO. _____ |

## PLAINTIFF'S COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff GigaCloud Technology Inc ("Plaintiff" or "GigaCloud"), by and through undersigned counsel, complaining of Defendants Wan Hai Lines (USA) Ltd., Wan Hai Lines Ltd., and Wan Hai Lines (Singapore) PTE Ltd. (collectively, "Defendants"), alleges and states the following in support of the requested relief:

### NATURE OF THIS ACTION

1. GigaCloud has initiated this adversary proceeding with respect to a dispute with Defendants over inventory allegedly transferred to GigaCloud pursuant to the *Amended and*

---

[1] The debtors in the Bankruptcy Case (as hereinafter defined), along with the last four digits of each debtor's federal tax identification numbers, are: Noble House Home Furnishings LLC (1671); Best Selling Home Décor Furniture, LLC (5580); Le Pouf, LLC (8197); NH Services LLC ((626); and Heavy Metal, Inc. (3124) (collectively, the "Debtors"). The Debtors' service address in the Bankruptcy Case is 700 Milam Street, Suite 1300, Houston, TX 77002.

*Restated Order (i) Authorizing (A) the Sale of Certain Assets of the Debtors Free and Clear of Liens, Claims, and Encumbrances and (B) the Debtors to Enter into and Perform Under the Purchase Agreement and (ii) Granting Related Relief* [Docket No. 199] (the "Sale Order") as discussed in detail below.

2. Defendants argue that the inventory was sold to GigaCloud and initiated an arbitration proceeding seeking damages against GigaCloud. However, the Debtors never had possession of, or access to, the inventory and it was not, nor could it have been, transferred to GigaCloud under the Sale Order. The arbitration proceeding directly involves the interpretation and enforcement of this Court's Sale Order.

3. Defendants also breached the contract assumed and assigned to GigaCloud pursuant to the Sale Order by refusing to honor the terms of the contract and requiring a new contract in direct violation of the Sale Order. Defendants also failed to mitigate the damages that it alleges arise from the claim it is now bringing against GigaCloud in the arbitration proceeding.

4. This Court retained exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of the Sale Order (Sale Order, at ¶ 48). As such, this Court is the proper place to bring disputes regarding the sale of assets under the Sale Order.

5. GigaCloud has commenced this adversary proceeding to (i) assert a claim for declaratory judgment that, under the Sale Order, the disputed inventory was not transferred to GigaCloud and GigaCloud had no responsibility for payment under the assigned contract, and (ii) seek a preliminary injunction to stay the arbitration pending this Court's adjudication of the declaratory judgment causes of action.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this adversary proceeding under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (N), and (O).

7. Venue is proper under 28 U.S.C. §§ 1408 and 1409. This adversary proceeding is related to the Bankruptcy Case, which is pending in this Court.

8. This adversary proceeding is commenced pursuant to:

   a. Rule 7001(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), which allows for a proceeding "to determine the validity, priority, or extent of a lien or other interest in property";

   b. Rule 7001(g) of the Bankruptcy Rules, which allows for a proceeding "to obtain an injunction or other equitable relief";

   c. Rule 7001(i) of the Bankruptcy Rules, which allows for a proceeding "to obtain a declaratory judgment related to any proceeding described in (a)-(h); and

   d. 11 U.S.C. § 105(a), which allows this Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" Title 11 of the United States Code (the "Bankruptcy Code");

   e. The federal "All Writs" provision codified by 28 U.S.C. § 1651(a), which provides that: "the Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."

9. Plaintiff consents to the jurisdiction of the Bankruptcy Court to enter final orders or judgments in the event it is subsequently determined that the Bankruptcy Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## PARTIES

10. GigaCloud is an exempted company organized under Cayman Islands law with its principal place of business in El Monte, California.

11. Defendant Wan Hai Lines (USA) Ltd. ("Wan Hai USA") is a private limited company organized and existing under the laws of the State of California with its principal place of business in Scottsdale, Arizona. Wan Hai USA is 100% owned by Defendant Wan Hai Lines, Ltd.

12. Defendant Wan Hai Lines Ltd. ("Wan Hai") is a private limited company organized and existing under the laws of Taiwan, with its principal place of business in Taipei City, Taiwan.

13. Defendant Wan Hai Lines (Singapore) PTE Ltd. ("Wan Hai Singapore") is a private limited company organized and existing under the laws of Singapore, with its principal place of business in Singapore. Wan Hai Singapore is 100% owned by Defendant Wan Hai Lines, Ltd.

14. The Debtors have identified Defendants Wan Hai USA, Wan Hai and Wan Hai Singapore as creditors and parties receiving notice in the Bankruptcy Case.

## FACTS

A. Procedural History

15. On September 11, 2023 (the "Petition Date"), the Debtors each commenced a voluntary case under Chapter 11 of the Bankruptcy Code as Case Number 23-90773 (CML) (jointly administered, the "Bankruptcy Case") before the United States Bankruptcy Court for the Southern District of Texas (the "Court").

16. On September 19, 2023, the Court entered the *Order (I) Approving Bidding Procedures For Sale Of The Debtors' Assets, (II) Approving Bid Protections, (III) Scheduling Certain Dates With Respect Thereto, (IV) Approving The Form And Manner Of Notice Thereof, And (V) Approving Contract Assumption And Assignment Procedures* [Docket No. 81] (the

"Bidding Procedures Order"). The Bidding Procedures Order, inter alia, approved certain Bidding Procedures (as defined therein) and the designation of GigaCloud as the stalking horse purchaser in connection with the sale of substantially all of the Debtors' assets (the "Sale").

17. On October 27, 2023, the Court entered the Sale Order.

18. The Sale Order approved the Sale to GigaCloud pursuant to the Asset Purchase Agreement by and among Noble House Home Furnishings LLC and Certain Affiliates, as Seller, and GigaCloud Technology, as Buyer, dated as of September 11, 2023 (as may be amended, modified, or supplemented from time to time in accordance with the terms thereof and the Sale Order, the "Purchase Agreement").

19. Under the terms of the Sale Order: "This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order." (Sale Order, at ¶ 48).

20. The Closing (as defined in the Purchase Agreement) of the Sale occurred on October 31, 2023 (the "Closing Date").

B. Factual Background

21. On or about May 4, 2023, Debtor Noble House Home Furnishings, LLC ("Noble House") entered into Service Contract No. LAX23-097B with Defendants Wan Hai USA, Wan Hai and Wan Hai Singapore for the transportation of "Not Otherwise Specified" cargo consisting of household furnishings and goods in ocean shipping containers from load ports in Asia to discharge ports in Savannah, Georgia, New York City and Long Beach, California (the "Noble House Service Contract").

22. In order to make arrangements for the transportation of cargo under the Noble House Service Contract, Noble House engaged a freight forwarder, Xiamen Lion International

Logistics Co Ltd ("Lion"), a company based in Xiamen, China, to implement these shipments under the Noble House Service Contract.

23. Lion was engaged by Noble House under the terms of a freight forwarding agreement entered into between Noble House and Lion on or about March 1, 2023 (the "Lion Agreement"). Debtors have identified Lion as a creditor and a party receiving notice in the Bankruptcy Case. The Lion Agreement is not an "Assigned Contract" under the terms of the Purchase Agreement and at all relevant times remained between Lion and Noble House.

24. Lion arranged for the transportation by Defendants of Noble House cargo in the following sixty-one (61) ocean shipping containers:

   a. Forty-two (42) shipping containers loaded in Xiamen, Shanghai and Ningbo, China pre-petition on August 3, August 8 and August 11, 2023, respectively and transported to and discharged in Savannah, Georgia on September 26-27, 2023;

   b. Fifteen (15) shipping containers loaded in Xiamen, China post-petition on October 1, 2023 and transported to and discharged in Long Beach, California on October 21-22, 2023; and

   c. Four (4) shipping containers loaded in Ningbo, China post-petition on October 9, 2023 and transported to and discharged in Savannah, Georgia on November 27, 2023.

25. Noble House, through Lion, paid Defendants for the ocean freight for the forty-two (42) Savannah-bound containers shipped pre-petition, and after pressure from Defendants also paid the ocean freight for the fifteen (15) Long Beach-bound containers and the four (4) Savannah-bound containers shipped post-petition.

26. After the discharge of the shipping containers at ocean terminals in Savannah and Long Beach, Lion refused to release the original bills of lading for the cargo to Noble House on the ground that Noble House owed it payment for ocean freight for the subject cargo as well as for unrelated cargo shipped aboard other vessels (a pre-petition debt that was not assumed by GigaCloud). Lion based its ability to withhold the release of the bills of lading on the terms of the Lion Agreement.

27. After initially discussing the dispute with Lion in September and October of 2023, Noble House made no further efforts to obtain the original bills of lading from Lion or to otherwise release the cargo at the discharge ports in Savannah and Long Beach. Consequently, Noble House never obtained possession, control, or title to the cargo at any point before or after the Closing Date, and therefore could not transfer any rights in the cargo to GigaCloud. In addition, leading up to Closing, Noble House stated that Lion was completely unwilling to work with Noble House to resolve the matter, resulting in Noble House's decision to abandon the cargo. Following such decision, Noble House took no further actions to cause the release of the cargo and always remained without possession of, or access to, the cargo as of the Closing Date and thereafter.

28. Following Noble House's failure to accept delivery of the Long Beach cargo, the fifteen (15) Long Beach containers were eventually sent to a "General Order" warehouse operated by the U.S. Customs and Border Protection agency ("CBP"). The cargo in the Long Beach containers was eventually deemed abandoned by the CBP and the Noble House Long Beach cargo was auctioned off in May or June of 2024.

29. When Noble House failed to accept delivery of the Savannah cargo, the forty-two (42) Savannah containers that had been shipped post-petition were eventually considered by the CBP to be placed in "General Constructive Discharge" status, as the CBP contends that there is no

General Order warehouse in Savannah. Those containers and the Noble House cargo in them remained on terminal in Savannah and continued to accrue terminal demurrage charges, which charges were sent to the Defendants for payment.

30. The fate of the remaining four (4) Savannah containers discharged in late November of 2023 is currently unknown.

31. To GigaCloud's knowledge, the Savannah containers have not been released to the Defendants and the Noble House cargo in them has not yet been auctioned off by the CBP in Savannah, and they remain in "Constructive General Discharge" status in Savannah and continue to accrue terminal demurrage charges, which are being paid by the Defendants.

32. Under the terms of Section 2.1 of the Purchase Agreement as approved by this Court in the Sale Order, the definition of "Purchased Assets" is stated as follows: "Seller shall sell, transfer, assign**, convey and deliver to Buyer**, **and Buyer shall purchase from Seller, free and clear to the extent provided in the Approval Order of all Liens**, all of Seller's right, title and interest in and to all of Seller's property and assets, real, personal or mixed, tangible and intangible, held for use or used in the Business, wherever located (collectively, the "<u>Purchased Assets</u>"), as follows (but excluding, for avoidance of doubt, all of the Excluded Assets):…." (emphasis added).

33. The term "Lien" is further defined in Section 1.1 of the Purchase Agreement to mean: "with respect to any property or asset, any mortgage, lien, pledge, security interest, hypothecation, charge or any other similar encumbrance in respect of such property or asset."

34. Under Section 2.1(c) of the Purchase Agreement the following assets are included as "Purchased Assets": "all supplies, goods, materials, inventory and stock in trade **owned and held by Seller** for use in connection with the operation of the Business" (emphasis added).

35. Further, under Section 2.2 of the Purchase Agreement: "the Purchased Assets will not include any assets of any kind, nature, character or description (whether real, personal or mixed, whether tangible or intangible, whether absolute, accrued, contingent, fixed or otherwise, and wherever situated) that are not expressly included within the definition of Purchased Assets (the "Excluded Assets"),…."

36. The Purchase Agreement by its terms expressly excludes from purchase by GigaCloud any "goods, materials, inventory and stock in trade" that is not "owned and held" by Noble House or that has not been "delivered" to GigaCloud free and clear of any "Lien."

37. The cargo that was shipped aboard Defendants' vessels in the sixty-one (61) shipping containers both pre-petition and post-petition and held by Lion at the discharge ports on the basis of a purported "lien" was never held by Noble House, did not constitute "Purchased Assets," and was never conveyed or delivered to GigaCloud under the terms of the Purchase Agreement approved by the Sale Order.

   C. Defendants Commence Claim and Demand Maritime Arbitration Involving Ownership of Estate Property and Interpretation of Sale Order

38. On May 1, 2024, Defendants' legal counsel sent a letter to GigaCloud in which he claimed that because GigaCloud assumed the Noble House Service Contract as an "Assigned Contract" under the terms of the Purchase Agreement, it also assumed responsibility for the cargo remaining in Savannah and Long Beach and any associated detention or demurrage expense. Defendants claimed that GigaCloud owed $1,419,953.00 for unpaid demurrage and fees, which amounts to $23,277.92 per container. That letter was not received by GigaCloud until June 6, 2024.

39. On July 6, 2024, and after receiving additional information on the claim from Defendants' counsel, GigaCloud responded through counsel and noted, among other points, that:

9

    a. GigaCloud's assumption of the Noble House Service Contract was made in reliance upon the Cure Notice in the Bankruptcy Case, which indicated a cure cost of "zero," free and clear of all liens, claims and interests;

    b. Following GigaCloud's assumption of the Noble House Service Contract through the Purchase Agreement: (i) the Defendants required GigaCloud to enter into a new, separate agreement on May 2, 2024, Service Contract No. LAX24-097B (the "GigaCloud Service Contract"), in order to receive future transportation services from the Defendants; (ii) the Defendants subsequently made two (2) separate amendments to the GigaCloud Service Contract in May and June of 2024; and (iii) Section 14 of the GigaCloud Service Contract explicitly stated that it "constitutes the full understanding of the parties and is complete and exclusive statement of the terms of the contract", thereby effectively rescinding and superseding the Noble House Service Contract as between GigaCloud and Defendants; and

    c. Defendants issued demurrage invoices to Noble House and not to GigaCloud, and its demurrage collection correspondence was directed to Noble House and not to GigaCloud until after it had entered into the GigaCloud Service Contract.

40. Following the amendments made in May and June of 2024, the GigaCloud Service Contract has been amended twelve (12) more times by the Defendants and it has been used exclusively between the Defendants and GigaCloud for all shipments of cargo made by GigaCloud through the Defendants.

41. On July 12, 2024, Defendants' counsel requested that: "If [GigaCloud denies that it owns] the cargo at issue, we ask that they clearly state as much. Resolving this threshold question

will allow both parties to know how best to proceed to curtail any further unnecessary expense arising from the continued storage of this cargo." GigaCloud responded through counsel three (3) days later on July 15, 2024 by stating: "GigaCloud does not claim ownership of the cargo at issue. Wan Hai should confirm abandonment of the cargo directly with Noble House or the appropriate cargo owner."

42. Despite the assurances of Defendants' counsel that the Defendants would take further action to avoid storage expenses if GigaCloud confirmed that the cargo was not owned by GigaCloud, on January 7, 2025 Defendants' counsel sent another demand letter to GigaCloud in which it asserted that GigaCloud owed demurrage on just the containers held in Savannah in the amount of $5,672,160.00, plus an additional amount allegedly owed of $763,230.00 for the "estimated destruction cost" of the containers.

43. GigaCloud again responded through counsel on January 10, 2025 and stated: "As previously communicated, GigaCloud does not claim, nor has it ever claimed, ownership of any of these cargoes or any of the other 61 cargoes that Wan Hai currently holds, or previously held, at, or near, the Ports of Savannah, Los Angeles and Long Beach, shipped by Noble House. Therefore, GigaCloud has no objection as to what Wan Hai chooses to do with such cargoes. Please note that GigaCloud will not be responsible for any charges, including, without limitation, any demurrage charge or disposal fee, related to the cargoes at issue, because GigaCloud does not own, nor has it never owned, such cargoes. Any application or attempted application by Wan Hai of such charges to GigaCloud will be met with an appropriate legal response."

44. Significantly, in February of 2023 Defendants Wan Hai and Wan Hai USA entered into a settlement agreement with the U.S. Federal Maritime Commission's Bureau of Enforcement,

11

Investigations and Compliance in which it agreed to pay a civil penalty of $950,000.00 for violating federal regulations requiring reasonable detention and demurrage charges to shippers.

45. On April 7, 2025, Defendants' legal counsel sent a demand for arbitration to GigaCloud under the terms of the Noble House Service Contract, in which Defendants claimed that GigaCloud now owed the exorbitant sum of at least $6,970,864.00, as wells as attorneys' fees, arbitrators' fees and all costs. In this letter, Defendants indicated that they had appointed a maritime attorney in Norfolk, Virginia to act as their appointed arbitrator.

46. Because the failure to appoint a second arbitrator might result in the entire panel being appointed by the Defendants, GigaCloud appointed its own arbitrator, but stated expressly that: "In response to your correspondence of April 7, 2025, GigaCloud objects to this proceeding and is appointing an arbitrator within the required time frame on a 'without prejudice' basis and only to avoid default or unilateral appointment of a panel. This appointment does not waive or otherwise diminish GigaCloud's right to object to this proceeding or contest the arbitrability of this dispute. GigaCloud maintains that any arbitration proceeding arising from Noble House Service Contract lacks jurisdiction for a number of reasons, the least of which is an invalid or inapplicable arbitration clause. GigaCloud reserves the right to contest arbitrability in this proceeding and/or to seek judicial relief as appropriate."

47. After the full arbitration panel was appointed, GigaCloud asked for and was granted by the panel chair a cessation of the arbitration proceeding until June 6, 2025 so that it could explore a judicial challenge on the jurisdictional issue and the arbitrability of the alleged claim.

48. The arbitration initiated by Defendants conflicts directly with this Court's exclusive jurisdiction "with respect to all matters arising from or related to the implementation,

interpretation, and enforcement of this [Sale Order]," including the questions of whether the subject cargo was properly conveyed (or conveyed at all) to GigaCloud by Noble House under the Purchase Agreement; whether GigaCloud's assumption of the Noble House Service Contract obligated it with respect to the purported amount owed; and whether the Noble House Service Contract was rescinded and superseded by the GigaCloud Service Contract.

## COUNT I
## (DECLARATORY JUDGMENT ON GIGACLOUD'S LACK OF OWNERSHIP OR INTEREST IN THE CARGO)

49. GigaCloud repeats and incorporates by reference each of the allegations contained above, as though fully set forth herein.

50. Based on the foregoing allegations, a justiciable controversy exists between the parties.

51. Pursuant to Rule 7001(i) of the Bankruptcy Rules, this Court should issue a declaratory judgment holding that under the Court's exclusive jurisdiction to address: "all matters arising from or related to the implementation, interpretation, and enforcement of" the Sale Order:

   a. The subject cargo was never conveyed to GigaCloud by Noble House under the Purchase Agreement, and the cargo did not constitute "Purchased Assets" owned by GigaCloud; and

   b. GigaCloud had no responsibility or obligation to pay pre-petition debt, post-petition debt, demurrage or any fees or costs or other financial obligations owed to the Defendants and related to the cargo.

## COUNT II
## (DECLARATORY JUDGMENT IN THE ALTERNATIVE ON THE ASSIGNED CONTRACT AND FAILURE TO MITIGATE)

52. GigaCloud repeats and incorporates by reference each of the allegations contained above, as though fully set forth herein.

53. In the alternative, pursuant to Rule 7001(i) of the Bankruptcy Rules, this Court should issue a declaratory judgment holding that under the Court's exclusive jurisdiction to address: "all matters arising from or related to the implementation, interpretation, and enforcement of" the Sale Order:

   a. The Noble House Service Contract was effectively rescinded and superseded by the GigaCloud Service Contract; and

   b. To the extent the Noble House Service Contract was in effect, the Defendants acted improperly by grossly inflating their claimed demurrage and by failing to mitigate the exorbitant amount that they now claim is owed by GigaCloud.

## COUNT III
## (INJUNCTIVE RELIEF STAYING ARBITRATION)

54. GigaCloud repeats and incorporates by reference each of the allegations contained above, as though fully set forth herein

55. By proceeding with arbitration under the Noble House Service Contract and by forcing GigaCloud to defend itself from a dispute involving cargo that it did not own, the Defendants are taking actions which are directly contradicted by this Court's exclusive jurisdiction and which are otherwise improper.

56. GigaCloud seeks, pursuant to Rule 7001(g) of the Bankruptcy Rules and the equitable powers of this Court, an immediate temporary injunction and/or preliminary injunction

prohibiting Defendants from pursuing their claims in arbitration until such time as this Court has ruled on Count I and Count II of this Complaint.

57. Unless this Court issues an immediate temporary injunction and/or preliminary injunction prohibiting Defendants from proceeding to take the actions set forth above and which GigaCloud seeks to enjoin, GigaCloud will suffer immediate and irreparable injury and harm, and it will be subject to duplicative proceedings and a potentially inconsistent judgment and award from an arbitration tribunal that lacks the Court's exclusive jurisdiction, specialized knowledge, and specific experience with respect to the implementation and interpretation of the Sale Order and Purchase Agreement.

58. As demonstrated by the facts alleged herein, GigaCloud is likely to succeed on the merits of this action and be granted judgment in its favor by this Court.

59. If not enjoined, Defendants will take actions that are in violation of the Sale Order and Purchase Agreement and harmful to GigaCloud.  No adequate remedy exists at law, and money damages will not adequately compensate GigaCloud for its injuries if the Defendants are allowed to proceed with an arbitration tribunal.

60. The harm to GigaCloud from the Defendants' action in seeking relief through an arbitration tribunal can be readily avoided by maintaining the *status quo* during the pendency of this Court's consideration of the requested remedies sought by GigaCloud under the Counts herein seeking declaratory relief.

61. The irreparable harm that will be suffered by GigaCloud through the unlawful actions of the Defendants outweighs the minimal harm to be suffered by the Defendants if a temporary or preliminary injunction is issued.

**PRAYER FOR RELIEF**

WHEREFORE, GigaCloud respectfully requests this Honorable Court enter an order:

1. Granting GigaCloud's request for declaratory judgment as set forth in Count I, declaring that GigaCloud did not acquire and has no ownership or other interest in the subject cargo under the terms of the Sale Order and the Purchase Agreement;

2. In the alternative, granting GigaCloud's request for declaratory judgment as set forth in Count II, declaring that GigaCloud is not liable for and has no obligation to pay the Defendants any amounts with respect to the subject cargo or under the Noble House Service Contract, including any alleged demurrage owed to the Defendants, and that to the extent any amount is owed the Defendants acted improperly by grossly inflating their claimed demurrage and by failing to mitigate the exorbitant amount that they now claim is owed by GigaCloud;

3. Granting GigaCloud's request for injunctive relief as set forth in Count III, enjoining the arbitration from proceeding further pending this Court's resolution of Count I and Count II in this Complaint; and

4. Such other and further legal and equitable relief as this Court deems just and proper.

RESPECTFULLY SUBMITTED,

This 6th day of June 2025.

STOREY LAW PLLC

*Matthew Storey*
Matthew Storey
Storey Law PLLC
1425 N Durham Rd
Houston, Texas 77008
Telephone: (713) 253-0097
State Bar No.: 24060669
Email: matt@storeylawpllc.com

MOORE & VAN ALLEN, PLLC

*/s/ Hillary B. Crabtree*
Hillary B. Crabtree (Pro Hac Pending)
Ben E. Shook (Pro Hac Pending)
100 N. Tryon Street
Suite 4700
Charlotte, North Carolina 21218
Telephone: (704) 331-1000

Douglas M. Muller (Pro Hac Pending)
78 Wentworth Street
P.O. Box 22828
Charleston, SC 29413-2828
Telephone: (843) 579-7032

*Attorneys for GigaCloud Technology Inc*