IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS HOUSTON DIVISION

| | |
|---|---|
| In re:<br><br>NOBLE HOUSE HOME FURNISHINGS LLC., *et al.*,[1]<br><br>    Debtors. | Chapter 11<br><br>Case No. 23-90773 (CML)<br><br>(Jointly Administered) |

**LIMITED OBJECTION OF GIGACLOUD TECHNOLOGY INC TO DEBTORS' AND OFFICIAL COMMITTEE OF UNSECURED CREDITORS' JOINT MOTION FOR ENTRY OF AN ORDER (I) DISMISSING THE CHAPTER 11 CASES AND (II) GRANTING RELATED RELIEF**

GigaCloud Technology Inc ("GigaCloud"), by and through its undersigned counsel, submits this limited objection (the "Objection") to *Debtors' and Official Committee of Unsecured Creditors' Joint Motion for Entry of an Order (i) Dismissing the Chapter 11 Cases and (ii) Granting Related Relief* [Doc. No. 714] (the "Motion")[2]. In support of this Objection, GigaCloud respectfully represents:

**PRELIMINARY STATEMENT**

1.  Contemporaneously herewith, GigaCloud has filed (i) an adversary proceeding (the "Adversary Proceeding"), identified by Case Number 25-03414, with respect to a dispute with Wan Hai Lines (USA) Ltd., Wan Hai Lines Ltd., and Wan Hai Lines (Singapore) PTE Ltd. (collectively, "Wan Hai") over inventory allegedly transferred to GigaCloud pursuant to the

---

[1] The debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification numbers, are: Noble House Home Furnishings LLC (1671); Best Selling Home Decor Furniture, LLC (5580), Le Pouf, LLC (8197), NH Services LLC (9626), and Heavy Metal, Inc. (3124). The Debtors' service address in these Chapter 11 cases is 700 Milam Street, Suite 1300, Houston, TX 77002 (collectively, the "Debtors").

[2] All terms not otherwise defined herein shall be given the meanings ascribed to them in the Motion.

*Amended and Restated Order (i) Authorizing (A) the Sale of Certain Assets of the Debtors Free and Clear of Liens, Claims, and Encumbrances and (B) the Debtors to Enter into and Perform Under the Purchase Agreement and (ii) Granting Related Relief* [Docket No. 199] (the "<u>Sale Order</u>") as discussed in detail below, and (ii) *GigaCloud Technology Inc.'s Motion for an Order Retaining Jurisdiction* (the "<u>Retention Motion</u>").

2. Wan Hai argues that the inventory was sold to GigaCloud and initiated an arbitration proceeding seeking damages against GigaCloud. However, the Debtors never had possession of, or access to, the inventory and it was not, nor could it have been, transferred to GigaCloud under the Sale Order. The arbitration proceeding directly involves the interpretation and enforcement of this Court's Sale Order.

3. This Court retained exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of the Sale Order (Sale Order, at ¶ 48). As such, this Court is the proper place to bring disputes regarding the sale of assets under the Sale Order and this Court, not an arbitration panel, should determine whether the subject inventory was or was not sold by the Debtor pursuant to the Sale Order, as well as the effect of the assigned contract and the obligations assumed by GigaCloud.

4. The Debtors have filed the Motion to seek approval of a structured dismissal. In the Motion, the Debtors have specifically sought the retention of jurisdiction for prior orders notwithstanding 11 U.S.C. 349 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") [Motion, at ¶¶ 41-42].

5. GigaCloud has brought the adversary proceeding to (i) assert a claim for declaratory judgment that, under the Sale Order, the disputed inventory was not transferred to GigaCloud and GigaCloud had no responsibility for payment under the assigned contract, and, (ii) seek a

preliminary injunction to stay the arbitration pending this Court's adjudication of the declaratory judgment causes of action (collectively, the "Wan Hai Litigation").

6. As such, GigaCloud submits this Objection to request that any order granting the Motion specifically retains jurisdiction over the Wan Hai Litigation and notwithstanding section 349 of the Bankruptcy Code unless and until this Court hears and decides on the Retention Motion.

## BACKGROUND AND OBJECTION

7. On September 11, 2023 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors are operating their business as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these Chapter 11 cases.

8. On October 27, 2023, the Debtors sold substantially all their assets to GigaCloud pursuant to the Sale Order. The closing of the sale occurred on October 31, 2023.

9. The Sale Order approved the sale to GigaCloud pursuant to the Asset Purchase Agreement by and among Noble House Home Furnishings LLC ("Noble House") and Certain Affiliates, as Seller, and GigaCloud, as Buyer, dated as of September 11, 2023 (as may be amended, modified, or supplemented from time to time in accordance with the terms thereof and the Sale Order, the "Purchase Agreement").

10. A dispute has arisen between GigaCloud and Wan Hai related to whether certain inventory was sold to GigaCloud pursuant to the Sale Order and the Purchase Agreement. GigaCloud contends that the inventory was not sold or transferred to it because, at all times, Noble House neither had possession nor the legal right to transfer such inventory, and therefore could not convey title or control to GigaCloud pursuant to the terms of the Purchase Agreement and the Sale Order.

11. On or about May 4, 2023, Noble House entered into Service Contract No. LAX23-097B with Wan Hai for the transportation of "Not Otherwise Specified" cargo consisting of household furnishings and goods in ocean shipping containers from load ports in Asia to discharge ports in Savannah, Georgia, New York City and Long Beach, California (the "Noble House Service Contract").

12. The Noble House Service Contract was on the assumption and assignment list and was assigned to GigaCloud on the Closing Date with a zero-cure amount.

13. In order to make arrangements for the transportation of cargo under the Noble House Service Contract, Noble House engaged a freight forwarder, Xiamen Lion International Logistics Co., LTD. ("Lion"), a company based in Xiamen, China, to implement these shipments under the Noble House Service Contract under a freight forwarding agreement entered into between Noble House and Lion dated as of March 1, 2023 (the "Lion Agreement"). The Lion Agreement is not an "Assigned Contract" under the terms of the Purchase Agreement and at all relevant times remained between Lion and Noble House.

14. Lion arranged for the transportation by Wan Hai of Noble House cargo in sixty-one (61) ocean shipping containers leading up to the Petition Date headed to Savannah, Georgia and Long Beach, California.

15. Noble House, through Lion, paid Wan Hai paid Wan Hai for the ocean freight for the forty-two (42) Savannah-bound containers shipped pre-Petition, and after pressure from Wan Hai also paid the ocean freight for the fifteen (15) Long Beach-bound containers and the four (4) Savannah-bound containers shipped post-petition.

16. After the discharge of the shipping containers at ocean terminals in Savannah and Long Beach, Lion refused to release the original bills of lading for the cargo to Noble House on

4

the ground that Noble House owed it payment for ocean freight for the subject cargo as well as for unrelated cargo shipped aboard other vessels (a pre-petition debt that was not assumed by GigaCloud). Lion based its ability to withhold the release of the bills of lading on the terms of the Lion Agreement. Under international maritime practice, the bills of lading are documents of title, and without the bills of lading Noble House could not obtain legal possession of the goods.

17. After initially discussing the dispute with Lion in September and October of 2023, Noble House made no further efforts to obtain the original bills of lading from Lion or to otherwise release the cargo at the discharge ports in Savannah and Long Beach. Consequently, Noble House never obtained possession, control, or title to the cargo at any point before or after the Closing Date, and therefore could not transfer any rights in the cargo to GigaCloud. In addition, leading up to Closing, Noble House stated that Lion was completely unwilling to work with Noble House to resolve the matter, resulting in Noble House's decision to abandon the cargo. Following such decision, Noble House took no further actions to cause the release of the cargo and always remained without possession of, or access to, the cargo as of the Closing Date and thereafter.

18. Following Noble House's failure to take delivery of the Long Beach cargo, the fifteen (15) Long Beach containers were eventually sent to a "General Order" warehouse operated by the U.S. Customs and Border Protection agency ("CBP"). The cargo in the Long Beach containers was eventually deemed abandoned by the CBP and the Long Beach cargo was auctioned off in May or June of 2024.

19. When Noble House failed to take delivery of the Savannah cargo, the forty-two (42) Savannah containers that had been shipped pre-petition but arrived post-petition were eventually considered by the CBP to be placed in "General Constructive Discharge" status because of the apparent lack of a General Order warehouse in Savannah. Those containers and the Noble

House cargo in them remained on terminal in Savannah and continued to accrue terminal demurrage charges, which charges were sent to Wan Hai for payment.

20. The fate of the remaining four (4) Savannah containers discharged in late November of 2023 is currently unknown.

21. To GigaCloud's knowledge, the Savannah containers have not been released to Wan Hai and the Noble House cargo in them has not yet been auctioned off by the CBP in Savannah, and they remain in "Constructive General Discharge" status in Savannah and continue to accrue terminal demurrage charges, which are being paid by Wan Hai.

22. Under the terms of Section 2.1 of the Purchase Agreement as approved by this Court in the Sale Order, the definition of "Purchased Assets" is stated as follows: "Seller shall sell, transfer, assign, **convey and deliver to Buyer, and Buyer shall purchase from Seller, free and clear to the extent provided in the Approval Order of all Liens**, all of Seller's right, title and interest in and to all of Seller's property and assets, real, personal or mixed, tangible and intangible, held for use or used in the Business, wherever located (collectively, the "Purchased Assets"), as follows (but excluding, for avoidance of doubt, all of the Excluded Assets):…." (emphasis added).

23. The term "Lien" is further defined in Section 1.1 of the Purchase Agreement to mean: "with respect to any property or asset, any mortgage, lien, pledge, security interest, hypothecation, charge or any other similar encumbrance in respect of such property or asset."

24. Under Section 2.1(c) of the Purchase Agreement the following assets are included as "Purchased Assets": "all supplies, goods, materials, inventory and stock in trade **owned and held by Seller** for use in connection with the operation of the Business" (emphasis added).

25. Further, under Section 2.2 of the Purchase Agreement: "the Purchased Assets will not include any assets of any kind, nature, character or description (whether real, personal or

6

mixed, whether tangible or intangible, whether absolute, accrued, contingent, fixed or otherwise, and wherever situated) that are not expressly included within the definition of Purchased Assets (the "Excluded Assets") …."

26. The Purchase Agreement by its terms expressly excludes from purchase by GigaCloud any "goods, materials, inventory and stock in trade" that is not "owned and held" by Noble House or that has not been "delivered" to GigaCloud free and clear of any "Lien."

27. The cargo that was shipped aboard Wan Hai' vessels in the sixty-one (61) shipping containers both pre-petition and post-petition and held by Lion at the discharge ports on the basis of a purported "lien" was never held by Noble House, did not constitute "Purchased Assets," and was never conveyed or delivered to GigaCloud under the terms of the Purchase Agreement approved by the Sale Order.

28. Wan Hai refused to mitigate the damages by agreeing to allow CBP to auction the forty-two (42) containers to stop the accrual of terminal demurrage charges. As early as July 2024, GigaCloud confirmed to Wan Hai in writing that it disclaimed any ownership interest in the cargo in the containers.

29. Despite receiving numerous statements that GigaCloud did not own the inventory, Wan Hai commenced an arbitration proceeding on April 7, 2025, seeking at least $6,970,864 in damages from GigaCloud.

30. GigaCloud's assumption of the Noble House Service Contract was made in reliance upon the Cure Notice in the Bankruptcy Case, which indicated a cure cost of "zero," free and clear of all liens, claims and interests;

31. Following GigaCloud's assumption of the Noble House Service Contract through the Purchase Agreement: (i) Wan Hai required GigaCloud to enter into a new, separate agreement

on May 2, 2024, Service Contract No. LAX24-097B (the "GigaCloud Service Contract"), in order to receive future transportation services from Wan Hai; (ii) Wan Hai subsequently made two (2) separate amendments to the GigaCloud Service Contract in May and June of 2024; and (iii) Section 14 of the GigaCloud Service Contract explicitly stated that it "constitutes the full understanding of the parties and is complete and exclusive statement of the terms of the contract", thereby effectively rescinding and superseding the Noble House Service Contract as between GigaCloud and Wan Hai.

32. Wan Hai issued demurrage invoices to Noble House and not to GigaCloud, and its demurrage collection correspondence was directed to Noble House and not to GigaCloud until after it had entered into the GigaCloud Service Contract.

33. Following the amendments made in May and June of 2024, the GigaCloud Service Contract has been amended twelve (12) more times by Wan Hai and it has been used exclusively between Wan Hai and GigaCloud for all shipments of cargo made by GigaCloud through Wan Hai.

34. GigaCloud has never contended that it owned the inventory. In fact, GigaCloud has always believed the opposite, and has acted in a manner consistent with such belief, since without the bills of lading or possession of the cargo, Noble House could not have transferred the inventory to GigaCloud.

35. GigaCloud has brought the adversary proceeding to (i) assert a claim for declaratory judgment that, under the Sale Order, the disputed inventory was not transferred to GigaCloud and GigaCloud had no responsibility for payment under the assigned contract, and, (ii) seek a preliminary injunction to stay the arbitration pending this Court's adjudication of the declaratory judgment causes of action.

36. GigaCloud files this Objection to the Motion only to request that any order granting the Motion does not impede, and reserves the Court's jurisdiction over, GigaCloud's rights to pursue the Adversary Proceeding and the Retention Motion. GigaCloud hereby submits this limited objection to specifically request any order granting the Motion include the retention of jurisdiction with respect to the Wan Hai Litigation.

37. GigaCloud reserves the right to pursue all claims, causes of action and remedies against Wan Hai resulting from its breach of the Sale Order and its refusal to abide by the Sale Order.

RESPECTFULLY SUBMITTED,

This 6th day of June 2025.

STOREY LAW PLLC

*Matthew Storey*
Matthew Storey
Storey Law PLLC
1425 N Durham Rd
Houston, Texas 77008
Telephone: (713) 253-0097
State Bar No.: 24060669
Email:  matt@storeylawpllc.com

MOORE & VAN ALLEN, PLLC

/s/ Stephen E. Gruendel
Stephen E. Gruendel (Admitted Pro Hac)
Hillary B. Crabtree (Pro Hac Pending)
Ben E. Shook (Pro Hac Pending)
100 N. Tryon Street
Suite 4700
Charlotte, North Carolina 21218
Telephone: (704) 331-1000

Douglas M. Muller (Pro Hac Pending)
Moore & Van Allen PLLC
78 Wentworth Street
P.O. Box 22828
Charleston, SC 29413-2828
Telephone: (843) 579-7032

*Attorneys for GigaCloud Technology Inc.*