**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| NOBLE HOUSE HOME FURNISHINGS LLC, *et al.*, | Case No. 23-90773 (CML) |
| Debtors.[1] | (Jointly Administered) |

**COVER SHEET TO SIXTH INTERIM AND FINAL
FEE APPLICATION OF THOMPSON COBURN LLP FOR ALLOWANCE OF
COMPENSATION FOR SERVICES RENDERED AS COUNSEL
TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS
FOR (I) THE SIXTH INTERIM PERIOD FROM DECEMBER 1, 2024
THROUGH AND INCLUDING APRIL 30, 2025 AND (II) FINAL FEE PERIOD
FROM SEPTEMBER 22, 2023 THROUGH AND INCLUDING APRIL 30, 2025**

**Complex Case Fee Application Coversheet (Hourly)**

| | | |
|---|---|---|
| **Name of Applicant:** | Thompson Coburn LLP | |
| **Applicant's Role in Case:** | Counsel to Creditors' Committee | |
| **Docket No. of Employment Order(s):** | 245 | |
| **Interim Application ( X )   No.____6th____**<br>**Final Application   ( X )** | Indicate whether this is an interim or final Application.  If interim, indicate the number (1st, 2nd, 3rd, etc.) | |
| | **Beginning Date** | **End Date** |
| **Time period covered by this Application for which interim compensation has not previously been awarded:** | 12/01/2024 | 4/30/2025[2] |
| **Were the services provided necessary to the administration of or beneficial at the time rendered toward the completion of the case? ( Y ) Y/N** | | |
| **Were the services performed in a reasonable amount of time commensurate with the complexity, importance and nature of the issues addressed? ( Y ) Y/N** | | |

---

[1]   The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification numbers, are: Noble House Home Furnishings LLC (1671); Best Selling Home Decor Furniture, LLC (5580), Le Pouf, LLC (8197), NH Services LLC (9626), and Heavy Metal, Inc. (3124). The Debtors' service address in these Chapter 11 cases is 700 Milam Street, Suite 1300, Houston, TX 77002.

[2]   TC will be providing legal services beyond the April 30, 2025 deadline set forth in this Final Fee Application.  Therefore, TC has included in this fee application an estimate of the fees and expenses it will accrue in the Tail Period (as defined herein).

| Is the requested compensation reasonable based on the customary compensation charged by comparably skilled practitioners in other non-bankruptcy cases? ( Y ) Y/N | |
|---|---|
| Do expense reimbursements represent actual and necessary expenses incurred? ( Y ) Y/N | |
| **Compensation Breakdown for Time Period Covered by this Application** | |
| Total professional fees requested in this Application: | $724,850.50 |
| Total professional hours covered by this Application: | 966.40 |
| Average hourly rate for professionals: | $750.05 |
| Total paraprofessional fees requested in this Application: | $39,018.50 |
| Total paraprofessional hours covered by this Application: | 111.60 |
| Average hourly rate for paraprofessionals: | $349.63 |
| Total fees requested in this Application: | Up to $813,869.00 (including the Tail Fees and Expenses (defined below)) |
| Total expense reimbursements requested in this Application: | $855.54 |
| Total fees and expenses requested in this Application: | Up to $814,724.54 (including the Tail Fees and Expenses (defined below)) |
| Total fees and expenses awarded in all prior Applications: | $712,789.54 |

**Plan Status:** No plan has been or will be filed by the Debtors.  During the Compensation Period, the Debtors' professionals, after consulting with Applicant, continued to object to any filed administrative expense claims after obtaining an administrative claims bar date. In addition, Applicant and the Debtors' professionals coordinated on potential strategies to pursue in order to liquidate the Debtors' largest remaining asset, the cash collateral being held in reserve to secure a customs bond. The Committee professionals have determined that the conditions for confirmation of a chapter 11 plan cannot be met in these cases given the limited amount of projected funds in the estates after liquidation of the estates' remaining assets, payment of post-petition administrative expenses and the significant amount of unpaid section 503(b)(9) claims. However, with the liquidation of certain remaining assets, the case parties anticipate being able to make a meaningful distribution to holders of section 503(b)(9) claims. Therefore, the professionals for the Debtors and the Committee have determined to pursue a consensual structured dismissal of these cases as it offers holders of section 503(b)(9) claims the best prospect of realizing a meaningful recovery in the most cost efficient manner and shortest period of time possible.

**Primary Benefits:** Applicant's efforts during the Compensation Period have been on identifying all available avenues of recovery for creditors and moving the cases forward towards a consensual structured dismissal, as it offers holders of section 503(b)(9) claims the best prospect of realizing a meaningful recovery in the most cost efficient and shortest period of time possible.

*-- Remainder of page intentionally left blank --*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| NOBLE HOUSE HOME FURNISHINGS LLC, *et al.*,[3] | Case No. 23-90773 (CML) |
| Debtors. | (Jointly Administered) |

**SIXTH INTERIM AND FINAL FEE APPLICATION OF THOMPSON COBURN LLP
FOR ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED AS
COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS
FOR (I) THE SIXTH INTERIM PERIOD FROM DECEMBER 1, 2024
THROUGH AND INCLUDING APRIL 30, 2025 AND (II) FINAL FEE PERIOD
FROM SEPTEMBER 22, 2023 THROUGH AND INCLUDING APRIL 30, 2025**

**IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN WRITING. UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST FILE YOUR RESPONSE ELECTRONICALLY AT HTTPS://ECF.TXSB.USCOURTS.GOV/ WITHIN TWENTY-ONE DAYS FROM THE DATE THIS APPLICATION WAS FILED. IF YOU DO NOT HAVE ELECTRONIC FILING PRIVILEGES, YOU MUST FILE A WRITTEN OBJECTION THAT IS ACTUALLY RECEIVED BY THE CLERK WITHIN TWENTY-ONE DAYS FROM THE DATE THIS APPLICATION WAS FILED. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

**A HEARING WILL BE CONDUCTED ON THIS MATTER ON JUNE 27, 2025 at 1:00 P.M. (PREVAILING CENTRAL TIME) IN COURTROOM 401, 515 RUSK, HOUSTON, TX 77002. YOU MAY PARTICIPATE IN THE HEARING EITHER IN PERSON OR BY AN AUDIO AND VIDEO CONNECTION.**

**AUDIO COMMUNICATION WILL BE BY USE OF THE COURT'S DIAL-IN FACILITY. YOU MAY ACCESS THE FACILITY AT 832-917-1510. ONCE CONNECTED YOU WILL BE ASKED TO ENTER THE CONFERENCE ROOM NUMBER. JUDGE LOPEZ'S CONFERENCE ROOM NUMBER IS 590153. VIDEO COMMUNICATION WILL BE BY USE OF THE GOTOMEETING PLATFORM. CONNECT VIA THE FREE GOTOMEETING APPLICATION OR CLICK THE LINK ON JUDGE LOPEZ'S HOME PAGE. THE MEETING CODE IS "JUDGELOPEZ". CLICK THE SETTINGS ICON IN THE UPPER RIGHT CORNER AND ENTER YOUR NAME UNDER THE PERSONAL INFORMATION SETTING.**

**HEARING APPEARANCES MUST BE MADE ELECTRONICALLY IN ADVANCE OF BOTH ELECTRONIC AND IN-PERSON HEARINGS. TO MAKE YOUR APPEARANCE, CLICK THE "ELECTRONIC APPEARANCE" LINK ON JUDGE LOPEZ'S HOME PAGE, SELECT THE CASE NAME, COMPLETE THE REQUIRED FIELDS AND CLICK "SUBMIT" TO COMPLETE YOUR APPEARANCE**

---

[3] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification numbers, are: Noble House Home Furnishings LLC (1671); Best Selling Home Decor Furniture, LLC (5580), Le Pouf, LLC (8197), NH Services LLC (9626), and Heavy Metal, Inc. (3124). The Debtors' service address in these Chapter 11 cases is 700 Milam Street, Suite 1300, Houston, TX 77002.

Thompson Coburn LLP ("TC"), counsel to the Official Committee of Unsecured Creditors (the "Committee") in the above action, hereby files its sixth interim and final fee application (this "Application") for (a) the allowance of compensation for services rendered and necessary expenses for the period from December 1, 2024 through April 30, 2025 (the "Application Period")[4], (b) final allowance of compensation for professional services provided in the amount of $763,869.00 and reimbursement of actual and necessary expenses in the amount of $855.54 that TC incurred for the period from September 22, 2023 through April 30, 2025 (the "Final Fee Period"), and (c) allowance of an estimate of $50,000 in fees and expenses actually incurred during the Tail Period (the "Tail Fees and Expenses" and, together with the Final Fee Period, the "Entire Final Fee Period"), for a total, over the Entire Final Fee Period, of $814,724.54, pursuant to sections 33 and 331 of Title 11 of the United States Code (the "Bankruptcy Code"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rules 2016-1 and 9013-1 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the Southern District of Texas (the "Local Rules"), and the Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals [Docket No. 185] (the "Compensation Order").  In support of this Fee Application, TC submits the declaration of Mark T. Power, a partner of TC (the "Power Declaration") which is attached hereto as **Exhibit A,** and a proposed order granting the Application attached hereto as **Exhibit B**.  In further support of this Fee Application, TC respectfully states as follows:

## Preliminary Statement

1.      Throughout these chapter 11 cases, TC's professionals represented the Committee professionally, diligently and efficiently.   The Firm advised the Committee on a variety of

---

[4]   TC anticipates that the hearing set for June 27, 2025 (as may be continued or otherwise adjusted, the "Final Hearing") will be the last hearing in these Cases.  Because this Application – and the final fee applications for all case professionals – is being filed on or before June 27, 2025, in anticipation of the Final Hearing, this Application contains an estimate of fees and expenses TC expects to incur between May 1, 2025 the Final Hearing, which is the anticipated tail period (the "Tail Period").

complex matters and strove to ensure that secured Creditors would be recompensed as fully and fairly as possible given the financial circumstances of the Debtor.

2.     With the advice and assistance of TC, the Committee, among other items:

(a)     Successfully objected to the Debtors' proposed DIP financing arrangement with Wells Fargo Bank;

(b)     On the basis of these objections, negotiated consensual resolutions with Wells Fargo Bank and the stalking horse buyer which resulted in a carveout of potential assets for other creditors:

(c)     Successfully conducted an investigation of the Debtors in order to identify potential causes of action and sources of additional recovery for creditors;

(d)     Worked with the Debtors on alternative ways to liquidate the estates' remaining assets; and

(e)     Worked with the Debtors to fairly resolve and satisfy post-petition administrative expenses, and then to reach a joint determination that given the limited amount of projected funds available, a structured dismissal of these cases would provide the best possible financial return for holders of allowed section 503(b)(9) claims.

3.     Given these accomplishments, TC respectfully submits that the compensation and expense reimbursement sought herein for the professional services TC has provided to the Committee during the Entire Final Fee Period are reasonable and appropriate, commensurate with the scale, nature and complexity of these Chapter 11 cases, and should be allowed.

## Jurisdiction and Venue

4.     This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of Texas*, dated May 24, 2012 (the "Amended Standing Order").

5.     This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2) and Article III of the United States Constitution. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

6.      The statutory bases for the relief requested herein are sections 327, 328, 330 and 1103(a) of Title 11 of the United States Code (the "Bankruptcy Code"), Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rules 2014-1 and 2016-1 of the Local Rules of the United States Bankruptcy Court for the Southern District of Texas (the "Local Rules"), Rule 60 of the *Procedures for Complex Cases in the Southern District of Texas*, effective October 18, 2023, and the applicable provisions of the Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses filed under United States Code by Attorneys in Larger Chapter 11 Cases (the "Fee Guidelines").

## BACKGROUND

7.      On September 11, 2023, (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases") with the Court.  The Debtors continue to operate their business and manage their property as debtors and debtors-in-possession pursuant to Bankruptcy Code §§ 1107(a) and 1108.  No trustee or examiner has been appointed in these Chapter 11 Cases.

8.      On September 21, 2023 (the "Formation Date"), the United States Trustee for Region 7 appointed seven of the Debtors' unsecured creditors to serve as members of the Committee.  *See* ECF No. 89.  The Committee is presently composed of the following seven members: (a) DEV Property NJ LLC, (b) Ha Thanh Import-Export Company Limited, (c) Jian Su Chairone Home Furniture Co., Ltd., (d) FedEx Corporate Services, Inc., (e) Phu Tai Joint Stock Company, (f) Wegmans Furniture Industries SDN BHD, and (g) Eco Tech Co., Ltd.

9.      On September 25, 2023, the Committee interviewed multiple law firms for proposed counsel and selected Thompson Coburn to serve as its lead counsel.  On September 25, 2023, the Company interviewed and selected Province LLC to serve as its financial advisor.

10.     On October 25, 2023, TC filed its *Application Of The Official Committee Of Unsecured Creditors to Retain and Employ Thompson Coburn LLP As Counsel Effective as of September 25, 2023* [Docket No. 191] (the "<u>TC Retention Application</u>").   On November 21, 2023, the Court entered an Order approving the TC Retention Application [Docket No. 245] (the "<u>Retention Order</u>").

11.     The Retention Order authorizes compensation and reimbursement of TC in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any Orders entered in these Chapter 11 Cases.  The Retention Order also authorizes the compensation of TC at its standard hourly rates and the reimbursement of TC's actual and necessary out-of-pocket expenses incurred, subject to application to this Court.

12.     On February 14, 2024, TC filed its *First Interim Fee Application of Thompson Coburn, LLP for Allowance of Compensation for Services and Reimbursement of Expenses as Counsel to the Official Committee of Unsecured Creditors for the Period from September 22, 2023 through November 30, 2023* [Docket No. 325] (the "<u>First Interim Fee Application</u>").   On March 8, 2024, the Court entered an Order [Docket No. 352] approving the First Interim Fee Application.

13.     On May 23, 2024, TC filed its *Second Interim Fee Application of Thompson Coburn, LLP for Allowance of Compensation for Services and Reimbursement of Expenses as Counsel to the Official Committee of Unsecured Creditors for the Period from December 1, 2023 through February 29, 2024* [Docket No. 421] (the "<u>Second Interim Fee Application</u>").   On July 17, 2024, the Court entered an Order [Docket No. 443] approving the Second Interim Fee Application.

14.     On August 21, 2024, TC filed its *Third Interim Fee Application of Thompson Coburn, LLP for Allowance of Compensation for Services and Reimbursement of Expenses as Counsel to the Official Committee of Unsecured Creditors for the Period from March 1, 2024 through May 31, 2024* [Docket No. 486] (the "Third Interim Fee Application").  On September 23, 2024, the Court entered an Order [Docket No. 530] approving the Third Interim Fee Application.

15.     On November 15, 2024, TC filed its *Fourth Interim Fee Application of Thompson Coburn, LLP for Allowance of Compensation for Services and Reimbursement of Expenses as Counsel to the Official Committee of Unsecured Creditors for the Period from June 1, 2024 through August 31, 2024* [Docket No. 588] (the "Fourth Interim Fee Application").  On December 9, 2024, the Court entered an Order [Docket No. 614] approving the Fourth Interim Fee Application.

16.     On April 28, 2025, TC filed its *Fifth Interim Fee Application of Thompson Coburn, LLP for Allowance of Compensation for Services and Reimbursement of Expenses as Counsel to the Official Committee of Unsecured Creditors for the Period from September 1, 2025 through November 30, 2024* [Docket No. 697] (the "Fifth Interim Fee Application").  On May 21, 2025, the Court entered an Order [Docket No. 711] approving the Fifth Interim Fee Application.

## SUMMARY OF PROFESSIONAL INTERIM COMPENSATION AND REIMBURSEMENT OF EXPENSES REQUESTED

17.     By this Application, TC seeks the final allowance of $814,724.54, which consists of (i) $763,869.00 in fees for services rendered, (ii) $855.54 as reimbursement of expenses incurred during the entire period of TC's retention by the Committee, and (iii) an estimated

$50,000.00 in Tail Fees and Expenses actually incurred at or prior to the Final Hearing.[5]  During the Application Period, TC's attorneys and paraprofessionals expended a total of $51,935.00 and 56.80 hours for which compensation is requested.

18.     Pursuant to the Interim Compensation Order, during these Chapter 11 Cases, TC submitted monthly fee statements from time to time and received payment of 80% of fees and 100% of expenses with respect thereto.  A summary of the paid and unpaid amounts from the First Interim Fee Application as well as those for the Second, Third, Fourth and Fifth Interim Fee Applications follows, in addition to a summary of the paid and unpaid amounts from the monthly fee statements submitted to the Court during the Sixth Interim Period.

19.     TC has been paid 100% of the fee and expense amounts requested in its First, Second, Third and Fourth Interim Fee Applications or $652,003.04, plus 80% of the fee amounts requested in its Fifth Interim Fee Application, or $48,629.20, and $32,151.60 of the $51,935.00 total fees currently being requested in the sixth interim period, for a total of **$732,783.34** that TC has been paid so far.  TC is still owed the 20% holdback amount from its fifth interim fee application, or $12,157.30, together with the $19,783.40 which remains unpaid from the sixth interim period, for a total balance of **$31,940.70** remaining to be paid to TC.

---

[5]     All amounts reflected from this point forward in this Application do not include the Tail Fees and Expenses or the time expended during the Tail Period, which are also submitted for final approval in this Application.  TC will only be entitled to any approved Tail Fees and Expenses to the extent such amounts are actually incurred by TC during the Tail Period.

**Summary of Previously Filed Interim Fee Applications:**

| Date Filed [ECF No.] | Period Covered | Fees Incurred | Fees Paid | Expenses Incurred | Expenses Paid | Balance Due |
|---|---|---|---|---|---|---|
| 1st Interim 2/14/24 [ECF 325] | 9/22/23 – 11/30/23 | $409,738.50 | $409,738.50 | $855.54 | $855.54 | $00.00 |
| 2nd Interim 5/23/24 [ECF 421] | 12/1/23 – 2/29/24 | $137,422.00 | $137,422.00 | $0.00 | $0.00 | $0.00 |
| 3rd Interim 8/21/24 [ECF 486] | 3/1/24 – 5/31/24 | $82,145.00 | $82,145.00 | $0.00 | $0.00 | $0.00 |
| 4th Interim 11/15/24 [ECF 588] | 6/1/24 – 8/31/24 | $21,842.00 | $21,842.00 | $0.00 | $0.00 | $0.00 |
| 5th Interim 4/28/25 [ECF 697] | 9/1/24 – 11/30/24 | $60,786.50 | $48,629.20 | $0.00 | $0.00 | $12,157.30 |
| | TOTALS: | **$711,934.00** | **$699,776.70** | **$ 855.54** | **$ 855.54** | **$12,157.30** |

**Summary of Monthly Fee Applications for Sixth Interim Period:**

| Date Filed [ECF No.] | Period Covered | Fees Incurred | Fees Paid | Expenses Incurred | Expenses Paid | Balance Due |
|---|---|---|---|---|---|---|
| 15th Monthly 1/23/25 [ECF No. 656] | 12/1/24 – 12/31/24 | $6,968.00 | $5,574.40 | $0.00 | $0.00 | $1,393.60 |
| 16th Monthly 3/7/25 [ECF No. 678] | 1/1/25 – 1/31/25 | $20,367.50 | $16,294.00 | $0.00 | $0.00 | $4,073.50 |
| 17th Monthly 4/10/25 [ECF No. 688] | 2/1/25– 2/28/25 | $12,854.00 | $10,283.20 | $0.00 | $0.00 | $2,570.80 |
| 18th Monthly 5/19/25 [ECF No. 701] | 3/1/25 – 3/31/25 | $4,978.50 | $0.00 | $0.00 | $0.00 | $ 4,978.50 |
| 19th Monthly 5/19/25 [ECF No. 702] | 4/1/25 – 4/30/25 | $6,767.00 | $0.00 | $0.00 | $0.00 | $6,767.00 |
| | Totals: | **$51,935.00** | **$32,151.60** | **$ 0.00** | **$ 0.00** | **$19,783.40** |

20.     The fees charged by TC in these Chapter 11 Cases are billed in accordance with TC's existing billing rates and procedures in effect at the time such fees or expenses were incurred.   The rates TC charges for the services rendered by its professionals and paraprofessionals in these Chapter 11 Cases generally are the same rates TC charges for professional and paraprofessional services rendered in comparable bankruptcy and non-bankruptcy related matters.   Such fees are reasonable based on the customary compensation charged by comparably skilled practitioners in comparable bankruptcy and non-bankruptcy cases in a competitive national legal market.  Attached as **Exhibit C** is a chart comparing TC's rates for professionals in this matter against current and historical rates of the firm.

21.     Attached hereto as **Exhibit D** is a summary breakdown of hours and amounts billed by timekeeper.  The summary sheet lists those TC professionals and paraprofessionals who have performed services for the Committee during the Final Fee Period, the capacities in which each individual is employed by TC, the hourly billing rate charged by TC for services performed by such individual, the year in which each attorney was first licensed to practice law, where applicable, and the aggregate number of hours expended in this matter and fees billed therefor.

22.     TC maintains computerized records of the time spent by all TC attorneys and paraprofessionals in connection with these Chapter 11 Cases.  Copies of the time records of TC's attorneys and paraprofessionals for the Final Fee Period (not including the Tail Period) are included hereto as **Exhibit F.**

23.     Although every effort has been made to include all fees and expenses incurred during the Application Period, some fees and expenses might not be included in this Application due to delays caused by accounting and processing during the Application Period. TC reserves the right to make further application to this Court for allowance of such fees and expenses not

included herein. Subsequent fee applications will be filed in accordance with the Bankruptcy Procedure, the Local Rules, and the Compensation Order.

<u>**Summary of Legal Services Rendered during the Final Fee Period**</u>

24.     As discussed above, during the Final Fee Period, TC provided significant and important professional services to the Committee in connection with the Chapter 11 Cases. These services were necessary to address a multitude of critical issues both unique to the chapter 11 cases and typically faced by creditor committees in similar cases of this magnitude and complexity.  Below is a more detailed summary of the most significant professional services performed by TC in each task code category, organized in accordance with TC's internal system of matter numbers for these chapter 11 cases.  Additionally, a summary table outlining the fees and hours billed for each task code category is attached as **Exhibit E-1**, while a breakdown of the expenses billed by TC in connection with this case is attached as **Exhibit E-2**.

      (a)     <u>**General**</u>

          Fees: $188,696.50     Total Hours:  $228.70

25.     This task code includes time spent by TC attorneys on a variety of tasks throughout the entirety of the case, including:

      (a)     analyzing the Debtors' motions to (i) approve proposed DIP financing with Wells Fargo Bank, and (ii) approve a sale of substantially all of the Debtors' assets, and develop objections to each on behalf of the Committee;

      (b)     preparing employment applications for Committee professionals, and reviewing the terms of employment of professionals engaged by the Debtors;

      (c)     developing legal strategy for generating recovery on assets;

      (d)     negotiating consensual resolutions with Wells Fargo and the stalking horse buyer, which resulted in a carveout of potential assets for other creditors;

      (e)     commencing an investigation of the Debtor in order to identify potential causes of action and sources of additional recovery for other creditors;

      (f)     working with the Debtors on alternative ways to liquidate the estates' remaining assets; and

(g)     reviewing and responding to motions filed by the Debtors on an ongoing basis throughout the life of the case;

(h)     taking the necessary steps to ensure an effective and meaningful distribution of funds to holders of section 503(b)(9) claims; ;

(i)     taking the steps necessary to move the case forward toward a consensual structured dismissal.

### A.     <u>Creditors' Committee</u>

Total Fees: $197,787.00     Total Hours: 280.30

26.     This task code includes time spent by TC attorneys communicating frequently and transparently with Committee members in order to manage administrative matters, communicate important case developments and issues, and collectively formulate legal strategy moving forward as the case progressed.  At case outset, in addition to resolving administrative matters such as interviewing and hiring providers of specific professional services and drafting bylaws, these communications focused on formulating Committee objections to the Debtors' proposed DIP loan, and analyzing the extent and import of filed administrative claims with regard to potential recovery for creditors.  As the case developed, these communications shifted more towards identifying other potential avenues of recovery for creditors, communicating results of the investigation of the Debtors' designed to achieve this purpose, and communicating the progress of steps needed to ultimately move towards a structured dismissal of the case.

### B.     <u>Retention</u>

Total Fees: $15,669.50     Total Hours: 25.10

27.     This task code includes time spent by TC attorneys drafting, revising and filing employment applications for Committee professionals, overseeing the Committee's responses to employment applications filed by the Debtors' professionals, and managing ongoing informational updates regarding the terms of Committee professionals' employment.

### C.   Executory Contracts

Total Fees: $2,256.00 Total Hours: 2.10

28.   This task code includes time spend by TC attorneys reviewing and responding to the Debtors' series of filed motions to reject specific leases and executory contracts, as well as review of the associated Court orders.

### D.   Investigation of Secured Liens

Total Fees: $28,539.50        Total Hours: 59.40

29.   This task code includes time spent by TC attorneys investigating the extent of secured liens held against the Debtors' bankruptcy estate, determining the validity of said liens, and whether such liens were properly perfected prepetition and estimating the financial effects of secured claims on the Debtors' bankruptcy estate.   Activities undertaken by TC attorneys included:

    (a)   investigation and identification of all parties holding secured liens against the Debtor;

    (b)   specific investigation of the nature of liens held by Wells Fargo Bank;

    (c)   reviewing all existing deposit account control agreements (DACA) with financial institutions;

    (d)   analysis of the potential for perfection of all liens held against the Debtor by larger creditors;

    (e)   investigation of security interests in purchased equipment held by Banc of America Leasing Co. (BALC);

    (f)   identification of any potential fraudulent conveyances that could potentially be clawed back.

### E.   Sales of Assets

Total Fees: $52,773.00        Total Hours: 64.80

30.   Successful sale and liquidation of all of the Debtors' assets was essential in order to raise enough funds for a meaningful distribution to creditors.   This task code encompasses

time spent by TC attorneys ensuring that the asset sales process proceeded smoothly and fairly, and covers the following activities:

<div style="margin-left: 2em">

(a)    Thorough legal review of the bid procedures, sale motion, and asset purchase agreement with regard to long-term financial viability and incorporation of a specific asset carveout for other creditors;

(b)    Drafting, reviewing and filing of limited objection to the sale motion on behalf of the Committee;

(c)    Preparing for and attending court-mandated sale hearing;

(d)    Managing sales of specific assets during the post-hearing period

</div>

### F.    <u>Professional Fees</u>

Total Fees: $91,900.00      Total Hours: 158.90

31.    This task code includes time spent by TC attorneys drafting, revising and filing the firm's own monthly fee statements and interim fee applications, as well as related certificates and proposed orders, and conducting detailed reviews of fee applications submitted by the Debtors' professionals.

### G.    <u>Claims Administration</u>

Total Fees: $11,565.50      Total Hours: 12.60

32.    Beginning at case outset, TC attorneys worked to understand the entirety of claims filed against the Debtors' bankruptcy estate, and the potential impact that these claims might have on the funds available for distribution to creditors.  With the administrative expense bar date scheduled for June 21, 2024, TC attorneys worked to investigate potential estate claims and causes of action, while the Debtors' professionals reviewed all filed administrative expense claims, including section 503(b)(9) claims.  Following the Debtors' filing of objections to administrative expense claims and the completion of the Committee's investigation into potential claims, a joint determination was made that conditions for confirmation of a Chapter 11 plan

couldn't be made given the limited amount of projected funds available, and that a consensual structured dismissal of the cases would ultimately be more feasible.

### H.   **Investigation of Company**

Total Fees: $121,888.50        Total Hours: 155.70

33.     Promptly upon retention, Applicant commenced an investigation of the Debtors' proposed DIP financing arrangement with Wells Fargo Bank, as well as the Debtors' motion to approve a sale of substantially all of its assets.   As a result of the investigation, Applicant discovered a number of infirmities in the proposed relief sought in these proposals, and on the basis of these findings, was able to negotiate consensual resolutions with Wells Fargo and the stalking horse buyer which ultimately resulted in a carveout of potential assets for other creditors and assurances that funds would be made available to pay postpetition administrative claims following the sale closing.   Thereafter, TC's efforts focused on an extensive Rule 2004 investigation to fully illuminate the Debtors' financial position, understand the nature of outstanding claims, uncover further avenues of recovery for creditors.   Throughout all phases of the investigative process, Applicant coordinated tightly with the Committee to develop strategy, and share results.

### I.   **Employee Issues**

Total Fees: $1,061.00 Total Hours: 1.00

34.     This task code includes time spent by TC attorneys reviewing motions made by the Debtors' regarding employee compensation with a view towards understanding their impact on funds available for distribution to creditors.   TC attorneys reviewed and analyzed the financial viability of the Debtor's key employee retention program (KERP), and communicated with the U.S. Trustee's office regarding Committee approval of the Debtors' motion to approve executive bonuses.

**J.**    **DIP Financing**

Total Fees: $51,732.50          Total Hours: 89.40

35.    Promptly upon retention, Applicant commenced an investigation of the Debtors' proposed DIP financing arrangement with Wells Fargo Bank.   Through the investigation, Applicant uncovered certain infirmities in the proposed relief sought in these proposals, and on the basis of these findings, was able to negotiate consensual resolutions with Wells Fargo and stalking horse buyer which ultimately resulted in carveout of potential assets for other creditors and assurances that funds would be made available to pay postpetition administrative claims following the sale closing.

### FINAL FEE PERIOD

36.    The professional services performed by TC on behalf of the Committee during the Final Fee Period required an aggregate expenditure of 1,078 hours by TC's partners, associates, and paraprofessionals.   Of the aggregate time expended, 452.20 recorded hours were expended by partners of TC, 514.20 recorded hours were expended by associates, and 111.60 recorded hours were expended by TC's paraprofessionals.

37.    During the Final Fee Period, TC billed the Committee for time expended by attorneys based on hourly rates ranging from $360 to $1,290 per hour for attorneys. Allowance of compensation in the amount requested would result in a blended hourly billing rate of approximately $750.05 (based on 966.40 recorded hours for professionals at TC's agreed billing rates in effect at the time of the performance of services).

38.    Compensation for the foregoing services as requested is commensurate with the complexity, importance, and nature of the problems, issues, and tasks involved. The professional services were performed expediently and efficiently. Whenever possible, TC sought to minimize

the costs of its services to the Committee by utilizing junior attorneys and paraprofessionals to handle the more routine aspects of case administration.

39.     In sum, the services rendered by TC during the Application Period and the Final Fee Period, as well as those rendered during the Tail Period, were necessary and beneficial to the Committee and were consistently performed in a timely manner commensurate with the complexity, importance, and nature of the issues involved.  Accordingly, the final approval of the compensation for professional services and reimbursement of the expenses sought herein is warranted.

## BASIS FOR THE RELIEF REQUESTED

40.     Section 331 of the Bankruptcy Code provides for interim compensation of professionals not more than once every 120 days after the commencement of the cases (or more often as the court may permit) and incorporates the substantive standards of section 330 to govern the Court's award of such compensation. Section 330 provides that a Court may award a professional employed under section 327 of the Bankruptcy Code "reasonable compensation for actual, necessary services rendered [and] reimbursement for actual, necessary expenses." 11 U.S.C. § 330(a)(1).

41.     Section 330 also sets forth the criteria for the award of such compensation and reimbursement:

> In determining the amount of reasonable compensation to be awarded to . . . [a] professional person, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including —
>
> A.     the time spent on such services;
>
> B.     the rates charged for such services;
>
> C.     whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

D.      whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

E.      with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

F.      whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

42.      In determining the reasonableness of fees, courts routinely employ the twelve factors set forth by the Second Circuit in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), which incorporates and expands upon the requirements of section 330 of the Bankruptcy Code. These factors include: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Id*. at 123 n.8. In *In re Second Colonial Corp. of America*, 544 F.2d 1291, 1298-99 (5th Cir. 1977), *cert. denied*, 431 U.S. 904 (1977), the Second Circuit applied the Johnson factors to the analysis of fee awards in bankruptcy cases.

43.      Under an analysis utilizing the *Johnson* factors and the standards customarily applied to fee awards under sections 330 and 331 of the Bankruptcy Code, TC submits that its request for compensation and reimbursement of expenses is reasonable and proper, and that such request should be allowed in the requested amount. TC devoted a substantial amount of time and

effort addressing the numerous issues involved in these Chapter 11 Cases. Whenever possible, TC sought to minimize the costs of its services to the Committee by utilizing junior attorneys and paraprofessionals to handle the more routine aspects of case administration.

44.    TC respectfully submits that the services for which it seeks compensation in this Application were, at the time rendered, believed to be necessary to represent the Committee effectively and efficiently.

45.    Further, TC submits that consideration of the relevant *Johnson* factors establishes that the compensation requested is reasonable in light of the nature, extent, and value of such services to the Committee:

(a)    *The Time and Labor Required*.  The professional services rendered by TC on behalf of the Committee have required the expenditure of substantial time and effort, as well as a high degree of professional competence and expertise, in order to deal with the many issues encountered with skill and dispatch. TC respectfully represents that the services rendered by it were performed efficiently, effectively and economically.

(b)    *The Novelty and Difficulty of Questions*. These Chapter 11 Cases are designated as "complex" cases and necessarily involved a significant number of novel or difficult issues in areas such as restructuring, lien perfection, litigation, and corporate finance. TC's efforts and effective assistance was for the purpose of maximizing value for the benefit of creditors.

(c)    *The Skill Required to Perform the Legal Services Properly*. TC believes that its recognized expertise in the area of insolvency proceedings and reorganization, particularly before this Court, have contributed to the efficient and effective representation of the Committee in these Chapter 11 Cases.

(d)    *The Preclusion of Other Employment by Applicant Due to Acceptance of the Case*. TC's representation of the Committee has not precluded its acceptance of new clients. However, the issues that have arisen in these Chapter 11 Cases required attention on a continuing, and often times emergent, basis, requiring TC's professionals to commit significant portions of their time to these cases.

(e)    *The Customary Fee*. The fees sought herein are based upon TC's normal hourly rates for services of this kind. TC respectfully submits that the hourly rates of its professionals are not unusual given the time expended in attending to the representation of the Committee. TC's hourly rates and the fees requested herein are commensurate with fees TC has been awarded in other Chapter 11 Cases, as well as with fees charged by other attorneys of comparable experience.

(f)    *Whether the Fee is Fixed or Contingent*. The fees requested in this Application represent fees incurred based upon a fixed hourly rate basis, contingent upon the Court's approval of this Application.

(g)    *Time Limitations Imposed by Client or other Circumstances*. TC provided capable legal representation within the time limitations imposed under the unique circumstances of these cases. The issues that have arisen in these Chapter 11 Cases, particularly with respect to the disputes among the various stakeholders, required attention on a continuing, and often times emergent, basis,

(h)    *The Amount Involved and Results Obtained*. For the reasons described above, TC respectfully submits that the amount of fees for which compensation is sought is reasonable under the circumstances given the numerous matters that had to be addressed.

(i)    *The Experience, Reputation and Ability of the Attorneys*. TC is a professional association whose more than 400 attorneys practice extensively in the fields of bankruptcy and corporate restructuring; litigation; real estate; corporate, finance and business transactions; employment and other phases of the law. TC has represented debtors, creditors, fiduciaries, and numerous other parties in cases before the Bankruptcy Courts for the Southern District of Texas as well as in various other Bankruptcy Courts throughout the country.

(j)    *The Undesirability of the Case*. Not applicable.

(k)    *Nature and Length of Professional Relationship*. Not applicable.

(l)    *Awards in Similar Cases*. As previously indicated, the fees sought herein are commensurate with fees TC has been awarded in other chapter 11 cases.

46.    The Sixth Interim and Final Fee Application, along with the prior interim fee applications and monthly fee statements identified in paragraph 9 above, comprise the entirety of the fee applications filed by TC since the Petition Date consistent with Section 331 of the Bankruptcy Code. See 11 U .S .C. § 331.

47.    In sum, the services rendered by TC were necessary and beneficial to the Committee and were consistently performed in a timely manner commensurate with the complexity, importance, and nature of the issues involved. Accordingly, approval of the compensation for professional services and reimbursement of the expenses sought herein is warranted.

48.     No previous application for the relief sought herein has been made to this or any other Court.

WHEREFORE, TC respectfully requests that the Court:

1.     Approve interim and final allowance for the Sixth Interim Application Period of **$51,935.00** for professional services rendered to the Committee during the period from December 1, 2024, through and including April 30, 2025;

2.     Approve final allowance of **$763,869.00** for professional services rendered to the Committee and **$855.54** for out-of-pocket expenses incurred in connection with the rendering of such services during the period from September 22, 2023 through and including April 30, 2025;

3.     Allow on a final basis compensation and reimbursement for all actual Tail Period Fees and Expenses, up to an amount of $**50,000**;

4.     Authorize and direct the Debtors to immediately pay to TC the unpaid portion of such allowed fees and expenses totalling **$31,940.70** incurred during the Final Fee Period, together with the amounts accumulated during the Tail Period not to exceed $50,000, specifically; and

5.     Award such other relief as the Court deems just and proper under the circumstances.

Dated:  June 11, 2025                         THOMPSON COBURN LLP

By: */s/ Katharine Battaia Clark*
    Katharine Battaia Clark
    TX State Bar No. 24046712
    SDTX Bar No. 9913131
    2100 Ross Avenue, Suite 3200
    Dallas, TX 75201
    Tel.: (972) 629-7100
    Fax: (972) 629-7171
    Email:  kclark@thompsoncoburn.com

    *Counsel to the Official Committee of*
    *Unsecured Creditors*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 11th day of June, 2025, a true and correct copy of the above and foregoing was caused to be served through this Court's CM/ECF noticing system to all parties registered to receive notice in these cases.

<u>*/s/ Katharine Battaia Clark*</u>
Katharine Battaia Clark